ORGANIC WASTE SYSTEMS, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Ronald Blackburn, Appellee).

Fourth District (Industrial Commission Division) No. 4—92—0113WC

Opinion filed February 18, 1993.

Stevenson, Rusin & Friedman, Ltd., of Chicago (Gregory G. Vacala and Jeanmarie Calcagno, of counsel), for appellant.

Bucklin & McIntyre, P.C., of Springfield (Bradford C. Bucklin, of counsel), for appellee.

JUSTICE WOODWARD delivered the opinion of the court:

Claimant, Ronald Blackburn, filed an application for adjustment of claim pursuant to the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1985, ch. 48, par. 138.1 *et seq.*). Therein, he alleged back injuries arising out of and in the course of his employment with the employer, Organic Waste Systems. After a hearing held on May 3, 1989, the arbitrator denied compensation, finding that claimant failed to prove that his condition was causally connected to the subject accident. On review, the Industrial Commission (Commission) reversed the arbitrator's decision and awarded temporary total disability (TTD) for 55¹/₇ weeks. The Commission also found that claimant was permanently and partially disabled to the extent of 15% of the man as a whole and, further, was entitled to compensation for $14,845.15 in medical expenses. The circuit court confirmed the Commission's decision. This timely appeal followed.

Before this court, the employer raises two issues, namely, (1) the Commission's decision as to causal connection was against the manifest weight of the evidence; and (2) the Commission's award of permanent partial disability (PPD) at a rate of $426 per week was error.

At the arbitration hearing, claimant testified that on September 6, 1986, he was working for the employer. His task primarily consisted of operating and maintaining submersible water pumps which were pumping out a waste lagoon. At about 9 a.m., claimant was removing a 4 by 4 from the lagoon when his foot slipped, and he fell about three feet. Later in the morning, claimant was pulling a section of plastic irrigation pipe out of the lagoon. Again, his feet slipped, and

he fell down an embankment, landing on his tailbone. He tried to get up but felt a pinching type of pain in his lower back or buttocks. After climbing up the embankment, claimant sat down for about 40 minutes. That morning he told his supervisor, Larry Blessing, about his accident.

On September 7, 1986, claimant phoned Blessing, saying that the pain was worse and that he would not be able to work on September 8. Claimant called his family physician, Dr. Steven Kozak, for an appointment and was seen on September 9. Claimant told Dr. Kozak that he had fallen twice on his buttocks while at work. On examining claimant, Dr. Kozak found that he was mildly tender in the left paraspinal muscles at the lumbosacral junction. Claimant had a positive straight leg raising test on the left leg at 15 degrees elevation. Also, the right side straight leg raising maneuver gave pain in the left leg. At some point during the treatment of his condition, claimant told Dr. Kozak that he had no prior back or leg problems. On September 14, 1986, Dr. Kozak had claimant undergo a CT scan and then referred him to Dr. Haymer, a board-certified neurosurgeon.

Dr. Haymer examined claimant on September 22, 1986. At that time, claimant stated that he had fallen twice while working on September 6. Dr. Haymer examined claimant's lower back, spinal nerves and lower extremities. He reviewed the CT scan results and determined that claimant had an unspecified type of tumor in his lumbar area. In a surgical procedure performed on September 30, at which Dr. Kozak assisted, Dr. Haymer removed part of a tumor located in the spinal canal. Fearful of causing paraplegia, Dr. Haymer did not remove all of the tumor, which was determined to be a lipoma, or a nonmalignant fatty tumor.

After this surgery, claimant's lower back pain diminished substantially. In November 1986, claimant complained of pain on the top of his left foot. Claimant also experienced numbness in his left calf and also loss of left ankle reflex, the latter objectively determined by Dr. Haymer.

In May 1987, claimant briefly returned to work but experienced a recurrence of his lower back pain. In July 1987, claimant underwent a myelogram. On August 18, 1987, Dr. Haymer performed surgery on claimant, again assisted by Dr. Kozak. The disc at L4-L5 was normal, but Dr. Haymer partially removed the joint at the L4-L5 level, having determined that it was arthritic. On September 28, 1987, claimant returned to work without restrictions.

At the arbitration hearing, claimant testified that he experienced a crick in his back after stooping or bending to lift an object. Claim-

ant further stated that when he was involved in heavy lifting his back began to hurt. Also, his left foot pain was continuous. Claimant takes aspirin to diminish said pain.

Dr. Haymer's first evidence deposition was taken on August 25, 1987, shortly after the surgery to remove part of the arthritic joint. Dr. Haymer opined that trauma to either the lipoma or the arthritic joint at L4-L5 might have or could have caused claimant's symptoms of lower back and leg pain and numbness in his left leg. In his second evidence deposition, taken on October 4, 1988, Dr. Haymer stated that claimant had returned to work on September 28, 1987. He opined that claimant's back, leg and foot conditions could or might be permanent.

Dr. Steven Kozak's evidence deposition was taken on February 28, 1989. Dr. Kozak opined that claimant's back and left leg pain were related to his fall on September 6, 1986. Moreover, he stated that claimant's left foot pain is related to "nerve radicular symptoms," arising out of his lower back problems. Dr. Kozak added, "[M]y opinion is that the pain [claimant] has suffered is directly related to his fall we have been discussing. I am as yet still not clear in my own mind what the exact mechanism of that pain is and probably will never know." Dr. Kozak thought that claimant's back and foot pain, due to the subject fall, "may well be permanent."

■ The employer first argues that the Commission's decision as to causal connection was against the manifest weight of the evidence. It is within the Commission's province to determine questions regarding causal connection, and its findings will not be overturned unless they are against the manifest weight of the evidence. (*Frigo v. Industrial Comm'n* (1990), 199 Ill. App. 3d 880, 557 N.E.2d 624.) Moreover, it is well established that a finding of a causal relationship may be based on a medical expert's opinion that an accident "could have" or "might have" caused an injury. (*Mason & Dixon Lines, Inc. v. Industrial Comm'n* (1983), 99 Ill. 2d 174, 457 N.E.2d 1222.) Further, a chain of events which demonstrates a previous condition of good health, accident and subsequent injury resulting in disability may be circumstantial evidence to prove a causal nexus between the accident and claimant's injury. *International Harvester v. Industrial Comm'n* (1982), 93 Ill. 2d 59, 442 N.E.2d 908.

The employer argues that the court should reinstate the arbitrator's decision because there is no evidence of causation. Further, the employer contends that the Commission has, in effect, shifted the burden of proving causation to it. Also, the employer maintains that the

testimony of Drs. Haymer and Kozak do not support the Commission's conclusion as to causation.

■ These arguments miss the point. The unrebutted testimony of both claimant's treating physicians, Dr. Haymer and Dr. Kozak, is that the two possible causes of his lower back, left leg and foot pain are the arthritic joint and the lipoma, both located at L4-L5. Each physician testified that the subject falls of September 6, 1986, *could have* or *might have* aggravated either or both the arthritic joint or the lipoma. Dr. Kozak based his view in part on the fact that claimant gave a history of no back or leg problems prior to the subject falls.

Claimant's unrebutted testimony supports the conclusions of Drs. Haymer and Kozak. He had no lower back or leg problems prior to the fall. He had not missed any work for at least four years prior to his falls. The histories he gave each of his treating physicians was consistent, namely, he experienced substantial back and leg pain after the falls on September 6, 1986.

Given this record, we find that claimant came forward with sufficient evidence to carry his burden of proving a causal connection between the falls on September 6, 1986, and his subsequent lower back, left leg and left foot problems. The employer offered no evidence to rebut claimant's case. Accordingly, we hold that the Commission's decision as to causal connection is not against the manifest weight of the evidence.

■ Finally, the employer argues that the Commission's award of 75 weeks of PPD at $426 per week was erroneous. The relevant statute reads in pertinent part: "The maximum weekly compensation rate, for the period July 1, 1984, through June 30, 1987, *** shall be $293.61." (Ill. Rev. Stat. 1985, ch. 48, par. 138.8(b)(4).) Because the subject accident occurred within this period, we modify the Commission's PPD award. The PPD compensation rate is reduced from $426 per week to $293.61 per week.

For reasons stated above, the judgment of the circuit court is affirmed as modified.

*Affirmed as modified.*

McCULLOUGH, P.J., and RAKOWSKI, STOUDER, and RARICK, JJ., concur.