CLINTON PRICE, Appellee, v. THE INDUSTRIAL COMMISSION *et al.* (Sangamon County Sheriff's Department, Appellant).

Fourth District (Industrial Commission Division)   No. 4—95—0482WC

Argued January 9, 1996.—Opinion filed March 28, 1996.

Karen L. Kendall and Brad A. Elward (argued), both of Heyl, Royster, Voelker & Allen, of Peoria, and Kurt M. Koepke, of Heyl, Royster, Voelker & Allen, of Springfield, for appellant.

Patrick James Smith (argued), of Delano Law Offices, P.C., of Springfield, for appellee.

JUSTICE RARICK delivered the opinion of the court:

Claimant, Clinton Price, sought benefits pursuant to the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 1992)) for injuries sustained while in the employ of the Sangamon County sheriff's department (employer). Price was employed as a civil process server. On April 27, 1992, he injured his neck and back when he fell while pursuing a burglary suspect.

Prior to his April 27, 1992, accident, Price had experienced neck and shoulder problems. On April 10, 1989, Price underwent a computerized tomography (CT) scan which revealed a posterior prolapse of the C4-C5 and C5-C6, and a posterior and left posterior prolapse of the C5-C6 disc of approximately three millimeters magnitude which compressed the thecal sac anterior and on the left anteriorly. An electromyogram (EMG) revealed right C5 radiculopathy.

On April 27, 1989, Price was seen by a consultant, Dr. Edward Trudeau, who, after reviewing Price's records and conducting an examination, indicated that if Price's discomfort continued or if his condition did not improve, he should be referred for neurosurgical evaluation.

In March 1992, Price saw Dr. Joseph Maurer, complaining of neck and shoulder pain. A CT scan revealed a posterior osteophyte

formation at C5 and C6 which extended into the spinal canal and the C5-C6 neural foramina bilaterally. The scan revealed no disc bulge or herniation. An EMG revealed left C6 radiculopathy. On April 13, 1992, Dr. Maurer's office contacted Price and informed him of the results of the tests and that if he continued to experience pain Dr. Maurer would refer him to a surgeon.

Price's accident occurred on April 27, 1992. At the time, he experienced a dull pain that was not severe. That evening the pain in his neck, shoulders, and back worsened and he had trouble sleeping. Price continued to experience pain and have trouble sleeping, and he saw Dr. Maurer again on May 7, 1992. At that time he denied suffering any injury. Dr. Maurer referred Price to Dr. Hayner, a surgeon. Price's pain continued to worsen, and he went to the emergency room at St. Joseph's Hospital that evening.

Price saw Dr. Hayner on May 8, 1992. The history he gave Dr. Hayner was one of intermittent problems with his neck for the previous four years and severe pain in his neck and arm during the last month. Again he did not mention any accident or injury.

Price was admitted to Doctors Hospital on May 8, 1992. On May 12, 1992, he underwent an anterior cervical diskectomy and fusion of C5-C6 on the left. The operative report indicates that in addition to the disc herniation, a piece of free-floating disc was removed. Price's hospital records indicate that he denied any injury.

At the arbitration hearing, Price testified that he told Dr. Maurer about his April 27, 1992, accident, although he stated he was having trouble remembering. He also testified that he did not remember denying any injury to Dr. Maurer or the staff at Doctors Hospital. He did not remember whether he told Dr. Maurer about his injury.

In his evidence deposition, Dr. Maurer testified that he was unaware that Price had suffered any injury on April 27, 1992, until he received an accident report from Price's attorney. After reviewing the report Dr. Maurer testified that the accident could have aggravated Price's preexisting condition. On cross-examination Dr. Maurer stated that the problems he saw in Price during his May 7, 1992, visit were the same as he saw on the March 20, 1992, visit. Dr. Maurer acknowledged that he did not know whether Price's fall aggravated his condition. Dr. Maurer also acknowledged that there was no way to tell whether Price's condition was permanent.

The arbitrator denied compensation, finding that while Price had suffered an accident on April 27, 1992, his condition of ill-being was related to events prior to that date. The Industrial Commission (Commission) reversed the decision of the arbitrator, finding that Price's condition of ill-being had been aggravated by his April 27, 1992, ac-

cident. Noting that a medical opinion was not necessary to establish causation, the Commission found that Price's own testimony and medical records established a "chain of events" demonstrating a causal connection. The Commission also found that while Dr. Maurer equivocated on the question of causation, he did testify that Price's fall could have caused disc herniation. The Commission further found that Dr. Hayner's finding of a free-floating body in the disc, which had not shown up on previous CT scans, was significant. The Commission awarded Price $2^1/_7$ weeks of temporary total disability (TTD) benefits and found him disabled to the extent of 20% of the person as a whole. The circuit court confirmed the decision of the Commission.

The employer's first argument on appeal is that the Commission's determination that Price's condition of ill-being was causally connected to his April 27, 1992, accident was contrary to the manifest weight of the evidence. The employer maintains that Price's surgery and subsequent disability were related to his preexisting condition and not his April 27, 1992, accident. The employer contends that Price's medical records demonstrate that he had considerable neck problems prior to his accident, medical problems which Dr. Maurer stated would probably require surgical intervention.

The employer places significant weight on Dr. Maurer's testimony on cross-examination. The employer notes that while on direct Dr. Maurer testified that Price's preexisting condition could have been aggravated by his fall, he unequivocally stated in cross-examination that he did not know whether Price's fall aggravated his condition and could not tell to a reasonable degree of medical certainty whether an aggravation had occurred. The employer contends that Dr. Maurer's opinions are the most important because he was the only doctor to treat Price both before and after his accident.

■ As we have often held, it is solely within the province of the Commission to judge the credibility of witnesses, to draw reasonable inferences from their testimony, and to determine the weight accorded thereto, and the Commission's findings on these questions will not be disturbed on review unless they are contrary to the manifest weight of the evidence. *Wagner Castings Co. v. Industrial Comm'n*, 241 Ill. App. 3d 584, 594-95, 609 N.E.2d 397, 405 (1993). The manifest weight of the evidence is "that which is the clearly evident, plain and indisputable weight of the evidence. In order for a finding to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent." *Caterpillar, Inc. v. Industrial Comm'n*, 228 Ill. App. 3d 288, 291, 591 N.E.2d 894, 896 (1992).

Stated differently, a decision is contrary to the manifest weight of the evidence only when, after viewing the evidence in a light most

favorable to the agency, the court determines that no rational trier of fact could have agreed with the agency's decision. *Beeler v. Industrial Comm'n*, 179 Ill. App. 3d 463, 467, 534 N.E.2d 408, 411 (1989), citing *Board of Trustees of Southern Illinois University v. Knight*, 163 Ill. App. 3d 289, 291, 516 N.E.2d 991, 993 (1987).

The employer maintains that in the present case the conclusion opposite that drawn by the Commission is clear. The employer contends that the Commission's decision is erroneous because (1) the Commission focused on only that part of Dr. Maurer's opinion which supported a finding of causation; (2) the "chain of events" analysis is inapplicable to the facts; (3) Price was not credible; (4) the evidence demonstrates that Price had a herniated disc prior to April 27, 1992; and (5) even if Price's April 27, 1992, accident aggravated his preexisting condition, Price failed to show that such aggravation contributed to his condition of ill-being.

■ The employer argues that the Commission's finding that Dr. Maurer testified that Price's fall might have caused the disc herniation ignores Dr. Maurer's testimony that he could not say whether the fall aggravated Price's condition and is not even a permissible inference from Dr. Maurer's testimony. We disagree. The Commission found:

> "Dr. Maurer stated that in his opinion, [claimant's] fall might or could have caused the disc herniation. Dr. Maurer did hesitate on cross-examination in stating his opinion to a reasonable degree of medical certainty. Dr. Maurer testified that based on the fact that [claimant] had a problem with his neck that preexisted the accident, a fall such as [claimant] suffered could cause compression of the neck and could aggravate a preexisting condition of either slight or mild herniation."

Reviewing the record, we find a copy of a letter dated May 12, 1993, from Dr. Maurer states "[i]t is clear that such an injury could well aggravate his preexisting neck condition and indeed it was shortly after this that he required hospitalization and subsequently underwent surgery." Reviewing Dr. Maurer's testimony we find that he testified that Price's fall could have aggravated his preexisting condition, but he could not say within a reasonable degree of medical certainty whether it in fact did. It is well established that a finding of a causal relationship may be based upon a medical expert's opinion that an accident "could have" or "might have" caused an injury. *Organic Waste Systems v. Industrial Comm'n*, 241 Ill. App. 3d 257, 260, 608 N.E.2d 1243, 1245 (1993). The Commission's finding with respect to Dr. Maurer's testimony is clearly supported by the record.

■ With respect to the Commission's "chain of events" analysis,

the employer acknowledges that a finding of causal connection can be made based solely on a claimant's testimony, without supporting medical evidence, but contends that in the present case such finding was made in the face of medical evidence to the contrary. While there is medical evidence of a preexisting condition, there is no medical evidence precluding an inference that such preexisting condition was aggravated by Price's accident. Indeed, contrary to the employer's assertions, there is medical evidence to support it. The employer also contends that the facts of the present case do not support the Commission's "chain of events" analysis because Price had a preexisting condition. The employer cites no authority for the proposition that a "chain of events" analysis cannot be used to demonstrate the aggravation of a preexisting injury, nor do we see any logical reason why it should not. The rationale justifying the use of the "chain of events" analysis to demonstrate the existence of an injury would also support its use to demonstrate an aggravation of a preexisting injury.

■ The employer next contends that Price was not a credible witness. The employer maintains that Price was evasive in answering questions and that on numerous occasions Price simply stated that he did not know. None of this demonstrates that he was clearly not a credible witness and therefore we cannot say the Commission's determination that Price was a credible witness was contrary to the manifest weight of the evidence. *Watts v. Industrial Comm'n*, 77 Ill. 2d 30, 33, 394 N.E.2d 1171, 1172 (1979).

■ The employer next argues that the Commission erred in its analysis of the surgical report showing the presence of a free-floating piece of disc pressing on the nerve root. The Commission determined that preaccident diagnostic reports revealed no disc herniation, but the operative report found a free-floating piece of disc compressing the nerve root. The Commission found this to be supportive of its conclusion that Price's fall aggravated his preexisting condition. Such finding, the employer contends, ignores Dr. Maurer's testimony that Price's preaccident diagnostic tests were suggestive of a herniated disc. As we noted above, the interpretation of witness testimony, the weight accorded thereto, and the inferences to be drawn therefrom are questions of fact for the Commission. While the Commission could have inferred from Dr. Maurer's testimony that Price had a herniated disc before his accident, it is not the inference that the Commission drew.

■ Finally, the employer contends that assuming there was an aggravation of a preexisting injury as a result of Price's April 27, 1992, accident, Price failed to establish that his condition of ill-being was causally related thereto. This was a question of fact which the

Commission resolved against the employer and, reviewing the record, we cannot say that the Commission's resolution was contrary to the manifest weight of the evidence.

The employer's second argument on appeal is that the Commission erred in not deferring to the arbitrator's determinations of fact because the Commission did not see Price testify. We decline the employer's offer to depart from the rule established by *Komatsu Dresser Co. v. Industrial Comm'n*, 235 Ill. App. 3d 779, 601 N.E.2d 1339 (1992), and its progeny.

For the foregoing reasons, the judgment of the circuit court of Sangamon County is affirmed.

Affirmed.

McCULLOUGH, P.J., and RAKOWSKI, COLWELL, and HOLDRIDGE, JJ., concur.