THE VILLAGE OF OREANA, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Tommy Gephart, Appellee).

Fourth District    No. 4—96—0202WC

Argued October 23, 1996.—Opinion filed June 30, 1997.—Rehearing denied August 20, 1997.

Charles D. Knell and John F. Kamin, both of Quinn, Johnston, Henderson & Pretorius, Chartered, of Peoria, for appellant.

Richard G. Leiser, of Warren E. Danz, P.C., of Peoria, for appellee.

JUSTICE RAKOWSKI delivered the opinion of the court:

Claimant, Tommy Gephart, filed an application for adjustment of claim pursuant to the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 1994)) for injuries to his back that he sustained on January 22, 1993, while working for the Village of Oreana (employer). The arbitrator found that claimant failed to prove a causal connection between the condition that necessitated surgery and his accident on January 22, 1993. The Industrial Commission (the Commission) reversed and the circuit court of Macon County confirmed. Employer appeals, contending the Commission's decision that claimant proved a causal connection between his condition that necessitated the surgery, including a spinal fusion, and the accident is against the manifest weight of the evidence. We agree.

## FACTS

Claimant worked for employer as a public works superintendent in its water department. On January 22, 1993, while working, he attempted to hop over an 8-inch-high, 12-inch-wide snowdrift and, according to him, "[w]hen I landed, everything in my back just felt like it collapsed, just like an accordion, came together, and pain." He noticed pain in his mid and lower back and a burning sensation in his hips, legs, and calves. After taking 15 minutes to walk back to the treatment building, he phoned his wife, who took him to the hospital. At the hospital, he received X rays and medication and was told to see his family physician, Dr. Fritz.

Claimant saw Dr. Fritz on January 25, 1993. Claimant advised Dr. Fritz that he had had 15 to 20 episodes with his back since 1977 and had had six to seven in the last year. Claimant stated his problems could occur without any precipitating stress. Dr. Fritz ordered an MRI and referred claimant to Dr. Fulbright, a neurosurgeon. Dr. Fulbright saw claimant on February 8, 1993. After taking claimant's history, performing an examination, and reviewing the MRI, he ordered outpatient physical therapy and referred claimant back to Dr. Fritz. Dr. Fulbright found no evidence of a surgically remedial disease.

On March 8, 1993, at employer's request, claimant saw Dr. Ankenbrandt. Dr. Ankenbrandt diagnosed significant central disk protrusion or herniation and stated claimant may require surgery to correct his problems. However, he opined that claimant's back showed no sign of traumatic injury on January 22, 1993. He also stated there were no signs of a previous injury to claimant's back even though claimant gave such a history.

On March 17, 1993, claimant saw Dr. Schroeder, whom he was referred to by Dr. Fritz. Dr. Schroeder prescribed additional physical therapy, a TENS unit, and after these were unsuccessful, two steroid injections, also unsuccessful. He did not find claimant to be a surgical candidate. Dr. Schroeder could ascertain no cause for claimant's complaints and stated, "[t]his gentleman's pain complaints [are] inconsistent with any form of disability I know. I think this gentleman is suffering from a severe conversion reaction."[1] He believed claimant might require psychiatric help. Dr. Schroeder referred claimant to Dr. Harms, an orthopedic surgeon.

Claimant first saw Dr. Harms on May 20, 1993. Claimant told Dr.

---

[1]Conversion disorder is defined as:
"a kind of hysteric neurosis in which emotional conflicts are repressed and converted into sensory, motor, or visceral symptoms having no underlying organic cause, such as blindness, anesthesia, hypesthesia, hyperesthesia, paresthesia, involuntary muscular movements (for example, tics or tremors), paralysis, aphonia, mutism, hallucinations, catalepsy, choking sensations, and respiratory difficulties. The person who has conversion disorder is usually indifferent to the symptoms yet firmly believes the condition exists. Causal factors include a conscious or unconscious desire to escape from or avoid some unpleasant situation or responsibility or to obtain sympathy or some other secondary gain. Treatment usually consists of psychotherapy. Also called **conversion hysteria, conversation reaction.**" Mosby's Medical Dictionary 304 (3d ed. 1990).

Harms he had had some back problems on and off over the past 12 years but stated he had no prior injuries, accidents, or broken bones. He advised the doctor that, after jumping the snowdrift, he experienced immediate pain in his back that went into his legs. Dr. Harms examined claimant and reviewed X rays and the MRI. He diagnosed symptomatic degenerative disk disease at L4-L5 and L5-S1. Dr. Harms was aware claimant had treated with Dr. Fritz and Dr. Schroeder but did not recall reviewing their records.

On July 13, 1993, Dr. Harms performed a laminectomy and spinal fusion at L4, L5, and S1. Claimant returned to work on November 15, 1993, working 12 hours per week. However, after returning, he noticed pain in his hips and leg cramps from his hips to his ankles.

At employer's request, Dr. Matz, a neurosurgeon, reviewed claimant's medical records in late August of 1993. He found no indication that claimant's surgery was causally connected to the January 22, 1993, accident. He believed claimant's problems subsequent to January 22, 1993, were, "in essence, *** another episode involving his lower back, indistinguishable from the lengthy history of low back complaints that he had over the years." He also stated that if claimant suffered an aggravation of a preexisting injury on January 22, 1993, this condition resolved itself by the time he saw Dr. Fulbright on February 8, 1993, since at that time, Dr. Fulbright found no psychologic abnormalities. Dr. Matz also disagreed that claimant required surgical intervention and stated the surgery was performed by Dr. Harms, who was unaware of contradictory physical findings in the medical records.

There is no dispute that prior to January 22, 1993, claimant suffered from back problems and was treated numerous times dating back to 1977. In February of 1977, while in the military, claimant injured his back while lifting a welder. He was discharged and received a disability rating. In 1979, claimant lifted a spring suspension from a truck and injured his back. He suffered from a constant ache in his back that radiated into his legs. In 1980, claimant was hospitalized for 30 days due to the 1979 injury. In 1982, a myelogram was performed with normal results. In April of 1987, claimant was seen at the Veteran's Hospital. At this time, he stated he had been raking for approximately 10 minutes when he felt a pop in his low back. He complained of low back pain with radiation into his legs. In December of 1989, claimant again was seen at the Veteran's Hospital with complaints of discomfort in his low back and hips as well as radiation of burning into both legs. Finally, on January 30, 1990, claimant was seen for complaints of low back pain that he stated he had had for three to four months. He also complained of a burning sensation in the posterior regions of his thighs.

Claimant also admitted that on January 18, 1993, four days prior to the accident, he had back pain. However, he stated his back pain after the accident was different from the pain prior to the accident.

## ANALYSIS

Employer's only contention is that the Commission erred in finding a causal connection between claimant's accident of January 22, 1993, and his condition that necessitated surgery in July of 1993. It contends that the only testimony that addressed causal connection was that of its expert, Dr. Matz, who found no causal connection. It argues that the Commission's reliance on Dr. Harms' testimony was error.

In finding claimant sustained his burden of proving a causal connection, the Commission based its opinion on "[claimant's] credible testimony, [his] consistent history of accident given to all of the physicians, treating as well as evaluating doctors, the chain of events and Dr. Harms' causal connection opinion that the January 22, 1993 accident was an aggravation of [claimant's] pre-existing condition and that this aggravation accelerated [claimant's] condition of ill-being, necessitating fusion surgery." The Commission then stated, "[i]t is for the Commission to decide which medical view is to be accepted ***. [Citation.] The Commission accords greater weight to the opinions of Dr. Harms than the opinions of Dr. Matz, finding that Dr. Harms' opinions are more consistent with the facts and are credible and persuasive."

■ Again, employer contends that there is no conflicting medical testimony in this case and the only opinion on causal connection is that of Dr. Matz.

"Just as the existence of accidental injury is a question of fact for the Commission where a preexisting condition is involved, so too is the question of whether there is a causal connection between the alleged accident and the current condition of ill-being. [Citation.] The appropriate question is whether the evidence can support an inference that the accident aggravated the condition or accelerated the processes which led to the claimant's current condition of ill-being." *Cassens Transport Co. v. Industrial Comm'n*, 262 Ill. App. 3d 324, 331 (1994). "[I]t is solely within the province of the Commission to judge the credibility of witnesses, to draw reasonable inferences from their testimony, and to determine the weight accorded thereto, and the Commission's findings on these questions will not be disturbed on review unless they are contrary to the manifest weight of the evidence." *Price v. Industrial Comm'n*, 278 Ill. App. 3d 848, 852 (1996). " 'The manifest weight of the evidence is that which is "the clearly

evident, plain and indisputable weight of the evidence." [Citations.] In order for a finding to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent.' " *Drogos v. Village of Bensenville,* 100 Ill. App. 3d 48, 54 (1981), quoting *In re Application of County Collector,* 59 Ill. App. 3d 494, 499 (1978).

Employer's argument that the Commission credited Dr. Harms with rendering a diagnosis he actually did not make (aggravation of a preexisting condition) and, thus, rendering an opinion contrary to Dr. Matz's, is persuasive. Employer contends that the Commission mischaracterized Dr. Harms' testimony. According to employer, Dr. Harms never testified claimant sustained an aggravation of a preexisting injury. He testified that that was one possibility; he stated the accident could have caused a back strain *or* an aggravation. Moreover, after receiving more detailed information concerning claimant's prior back history, Dr. Harms admitted it was impossible for him to state whether claimant's surgery was necessitated by the accident on January 22, 1993. Claimant has the burden of proving causal connection. Before a fact question arises, claimant must demonstrate that Dr. Harms rendered an opinion in his favor. The issue boils down to whether a reasonable person could conclude that Dr. Harms rendered an opinion that claimant's condition of ill-being and resulting surgery were caused by the January 22, 1993, accident. After a review of Dr. Harms' testimony, we conclude that the answer is no.

Because resolution of this case hinges on Dr. Harms' opinion or lack thereof, a somewhat lengthy recitation of his testimony is necessary. During direct examination, Dr. Harms testified as follows:

"Q. Doctor, *** what is your opinion, based upon a reasonable degree of medical certainty, as to causation between the event which took place on January 22, 1993 and the conditions of ill-being for which you've treated your patient Mr. Gephart?

A. The patient in the incident described could have had a back strain or could have had an aggravation of his underlying premature degenerative disk disease.

\* \* \*

Q. Doctor, what is your opinion, based upon a reasonable degree of medical and surgical certainty, as to whether or not the operative procedure you've performed—and I realize the first diagnostic test was a discogram, but then the spinal fusion[,] was necessitated by the event your patient described as occurring on January 22, 1993.

A. *If* the patient had underlying premature degenerative disk disease that was aggravated by the incident, then the surgery was done sooner than it otherwise would have been in the absence of the incident." (Emphasis added.)

On cross-examination, he stated:

"Q. Doctor, I think you previously testified that there could be a causal relationship between the condition that you observed in Mr. Gephart's back and the need for surgery and this incident back in January of 1993, is that right?

A. Yes, sir, there could be.

Q. Is the basis of that opinion in large part the history that Mr. Gephart provided you?

A. Yes, sir. Without the history I have no way of knowing about any connection whatsoever.

Q. Doctor, I'm going to ask you a hypothetical question and to assume a number of things. ***

* * *

A. Yes, sir. Specifically, if a person has an incident, the less symptomatic they were before the incident, the more likely it is to be related to their symptoms. The more symptomatic a person is after the incident and the sooner they start having the symptoms after the incident, the more likely it is to be related. The more significant the trauma, that is the more the significant the energy that the body absorbs during an incident, the more likely it is to be related.

You have asked me to assume that in a patient similar to this one, that there was back pain with a lifting incident in the military in 1977. There was low back pain after a work incident in 1980. That there were complaints of low back pain and leg pain in 1987, '89 and '90. You have asked me to assume there were six or seven incidents of back problems, complaints in 1992 and '93. And you've asked me to assume that there were back complaints even as soon as four days before the incident described. With all of this information, it appears that there would be a high probability that even in the absence of a jumping incident, that the patient could have become sufficiently symptomatic that treatment up to and including surgery might need to be done about the time that I did surgery on the patient.

Q. In other words, I think when you testified previously, you said that the surgery was necessitated by this incident because it accelerated a need for incident. But with this additional history of prior back problems, you can no longer say that this incident, within a reasonable degree of medical certainty, necessitated an earlier surgery date?

* * *

A. The information provided to me initially was that the patient did not have significant back problems previous to the incident and then had increasingly severe symptoms which warranted surgery. I previously testified that the patient could have gotten a

back strain at the time or could have had aggravation of his underlying premature degenerative disk disease, which eventually necessitated surgery. That statement was made within a reasonable degree of medical certainty.

If I assume the facts that you've given me about previous back problems, then it is less likely that the incident played a significant role in the patient's symptoms, which were bad enough for him to undergo the surgery that I performed."

In response to re-direct examination, Dr. Harms testified:

"Q. Doctor, certain hypothetical scenarios were developed and propounded by opposing counsel. I'd ask you to assume conversely that the patient ***.

What is your opinion, based upon a reasonable degree of medical certainty, as to whether or not that particular situation as I've developed in the hypothetical could have been a significant causative factor to accelerate any underlying low back disease?
* * *

A. You're asking me to assume that there was a pop in the back at the time of the incident, and he had pain in the back that radiated down both legs.

Q. Correct.

A. And that the leg symptoms were greater than he had before, and that there was a pop or heat or burning sensation in the back?

Q. That's correct.

A. With that additional information you're asking me my opinion as to whether the incident accelerated the need for surgery for his condition?

Q. Correct, basically.

A. I think at the incident my original opinion was that the patient suffered *either a back strain or an aggravation of his underlying degenerative disk disease.* I still think that's the case. ***

I would still state that *if it was degenerative disk disease that was aggravated at that time, that the incident could have accelerated the need for operative intervention.*" (Emphasis added.)

Finally, on re-cross, Dr. Harms averred in response to combining all of the above hypotheticals plus the information he obtained from claimant at the time of his examination:

"A. If I'm to take the information I have available on Mr. Gephart and add to it the hypothetical information that both of you have added to my understanding of the situation, then it appears that there is a patient who is having significant problems before the incident on an intermittent basis. There appears to have been an incident, and the patient had continued symptoms after the incident. The more the problems before the incident the

less likely the incident is in being a significant factor towards causing worsening. That is, the patient could have had problems in spite of the incident. The more severe, the more frequent the symptoms before the incident, the more likely that he would have gotten worse even in the absence of the incident.

*It is also possible that the incident could have been the straw that broke the camel's back so to speak. It is difficult for me or impossible for me to say that absolutely the patient would not have needed surgery in the absence of the incident. But it's also impossible for me to say that the patient would not have been able to go another week, another month, another year.* Did I answer the question?

Q. I think you did. Yes. In other words, based on all those hypothetical situations, it's impossible for you to say within a reasonable degree of medical certainty, it's more probably true than not that this surgery would have been performed or would not have been performed at the time it was?

\* \* \*

A. Are you asking me is it impossible for me to state that more likely than not the surgery would or would not have been performed on the date that I did in the absence of the trauma?

Q. Exactly. \*\*\*

A. Correct." (Emphasis added.)

At best, Dr. Harms' testimony is ambiguous. Any opinion he rendered on causal connection is conditioned upon whether claimant suffered an aggravation of his preexisting disk disease or only a back strain. Although Dr. Harms continually referred to both, he never rendered a diagnosis of either. When he was specifically asked whether claimant would have required surgery in the absence of the accident, he stated it was impossible to say either way.

Also, while Dr. Harms originally opined there was a causal connection between claimant's surgery and the accident of January 22, 1993, by the time hypotheticals had been put to him, and he possessed all of the relevant facts of claimant's condition and history of back injuries, he stated it was impossible to state what necessitated claimant's surgery.

■ From the above, we conclude, contrary to the Commission's decision, that Dr. Harms did not render an opinion on whether the claimant's condition that necessitated surgery, including a spinal fusion, was causally related to the January 22, 1993, accident. Further, the Commission's statements that Dr. Harms' testimony is more credible and is to be accorded more weight would only have value if Dr. Harms did in fact render an opinion. Because we conclude that Dr. Harms did not give an opinion on casual connection, there was

no need to resolve conflicting testimony and the Commission erred in doing so. Based on this, the Commission's decision that claimant proved a causal connection between the accident of January 22, 1993, and his condition of ill-being necessitating surgery is against the manifest weight of the evidence. We wish to emphasize that our decision is limited to the specific issue presented by employer: whether claimant proved a causal connection between his accident and his condition of ill-being necessitating surgery, including a spinal fusion. Since we have found that claimant failed to meet his burden, he is therefore not entitled to surgical expenses or temporary total disability (TTD) benefits associated with the surgery or recuperation therefrom.

Nonetheless, claimant did sustain an injury that arose out of and in the course of his employment. Although claimant's entitlement to surgical expenses hinges on whether the accident aggravated his preexisting disk disease, his entitlement to TTD is not so dependent. Regardless of the precise nature of the injury (back strain or aggravation of disk disease), claimant may recover for that period of time when he was unable to work as a result of the accident. Accordingly, we remand to the Commission for further proceedings consistent with this opinion.

## CONCLUSION

For the foregoing reasons, we reverse the decision of the circuit court of Macon County.

Circuit court reversed and remanded to Commission with directions.

McCULLOUGH, P.J., and COLWELL, J., concur.

JUSTICE RARICK, dissenting:

Because I believe the majority has substituted its judgment for that of the Commission on a question of fact, I dissent. As often stated, it is for the Commission to weigh and resolve conflicts in testimony and to choose among conflicting inferences therefrom. We as a reviewing court cannot reject or disregard permissible inferences drawn by the Commission merely because differing inferences may also be drawn from the same facts. *Wagner Castings Co. v. Industrial Comm'n*, 241 Ill. App. 3d 584, 594-95, 609 N.E.2d 397, 405 (1993).

JUSTICE HOLDRIDGE joins in this dissent.