No. 401     May 7, 2025     333

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Kenneth L. BOLDT,
Personal Representative of Estate of
Phyllis L. Boldt,
*Plaintiff-Respondent,*

*v.*

BROOKDALE SENIOR LIVING COMMUNITIES, INC.,
doing business as Brookdale Mt. Hood,
*Defendant-Appellant.*

Multnomah County Circuit Court
20CV30853; A177521

Melvin Oden-Orr, Judge.

Argued and submitted February 4, 2025.

Michael J. Estok argued the cause and filed the briefs for appellant. Also on the briefs were Anne Wynn Decker and Lindsay Hart, LLP.

Kathryn H. Clarke argued the cause and filed the brief for respondent. Also on the brief was Charles Robinowitz.

Before Aoyagi, Presiding Judge, Egan, Judge, and Joyce, Judge.

JOYCE, J.

Reversed and remanded.

**JOYCE, J.**

Defendant appeals from an order denying its motion to compel arbitration of plaintiff's claims for negligence and wrongful death. The claims arose out of the care that defendant provided to plaintiff's mother during her residency at defendant's senior care facility. After plaintiff initiated this action in the trial court, defendant sought to compel arbitration based on an agreement that plaintiff's mother signed before moving into its facility. The trial court denied defendant's motion, concluding that the arbitration agreement was void because plaintiff's mother lacked the capacity to enter into the agreement. On appeal, defendant challenges that ruling. Defendant argues that the trial court erred in (1) denying its motion to compel arbitration, (2) excluding as inadmissible hearsay evidence related to plaintiff's mother's capacity, and (3) denying its request to have an evidentiary hearing on the issue of plaintiff's mother's capacity. Additionally, plaintiff cross-assigns error to the trial court's determination that he was not entitled to a jury trial on the issue of his mother's capacity.

As explained below, we agree with defendant that the trial court erred in denying its request to have an evidentiary hearing on the issue of plaintiff's mother's capacity. That conclusion obviates the need to address defendant's remaining assignments of error. As for plaintiff's cross-assignment of error, we conclude that the trial court did not err in denying plaintiff a jury trial. Accordingly, we reverse the order denying defendant's motion to compel arbitration and remand this matter to the trial court.

## I.   FACTUAL OVERVIEW

We understand the following facts to be undisputed. Defendant, Brookdale Senior Living Communities, Inc., owns an assisted living facility in Gresham, Oregon, and plaintiff's mother, Phyllis Boldt, was a resident there. At the time that she was admitted to defendant's facility, Phyllis suffered from dementia. Before moving into defendant's community, Phyllis signed an arbitration agreement. The three-page agreement stated that arbitration would be mandatory for "[a]ny and all claims or controversies arising out

of, or in any way relating to, this Agreement or any of your stays at the Community." The document also stated that "[t]he execution of this Arbitration Agreement is voluntary and not a precondition to receiving medical treatment or for admission to the Community."

After living at defendant's assisted living facility for a little over a year, Phyllis fell from the window of her third-floor apartment. Almost two months later, she died from the injuries that she sustained in that fall.

Plaintiff, the personal representative of his mother's estate, initiated this action against defendant for negligence and wrongful death. Based on the arbitration agreement that Phyllis signed before moving into its facility, defendant moved to compel arbitration and requested "an evidentiary hearing with findings of fact and conclusions of law under ORCP 62 A." Plaintiff responded, in part, that the arbitration agreement was void because his mother lacked mental capacity at the time that she signed the agreement.

In support of their positions, both parties submitted declarations and various exhibits that provided conflicting accounts of Phyllis's capacity. For example, declarations from Phyllis's previous neighbor, plaintiff's wife, and plaintiff collectively stated that Phyllis's dementia had caused her attention span to decrease, that she "could carry on a conversation for only about three to five minutes," and that she would "easily become confused." Meanwhile, an exhibit that plaintiff offered and defendant relied on showed that one of defendant's employees had noted while assessing Phyllis's care needs that she "could carry on conversation $\bar{s}$ confusion" (that is, without confusion).[1] Furthermore,

_____

[1] At the trial court level, the parties disputed the meaning of the $\bar{s}$ symbol. Plaintiff argued that the phrase "$\bar{s}$ confusion" meant "with confusion," whereas defendant contended that "$\bar{s}$" was a medical abbreviation meaning "without." We take judicial notice of the fact that Mosby's Medical Dictionary defines $\bar{s}$ as the "symbol for the Latin *sine*, 'without.'" *Mosby's Medical Dictionary* 1586 (9th ed 2012); OEC 201 (providing that appellate courts have the authority to take judicial notice of facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"); *see Godinez v. Williams*, 2024 CO 14, ¶ 33, 544 P3d 1233, 1239 (2024) (citing to *Mosby's Medical Dictionary* to define the term "maturation"); *see also Village of Oreana v. Industrial Comm'n*, 289 Ill App 3d 845, 847 n 1, 682 NE2d 1158, 1160 n 1 (1997) (citing to *Mosby's Medical Dictionary* to define the term "conversion disorder").

defendant also offered an exhibit showing that Phyllis had signed a "Physician Orders for Life-Sustaining Treatment (POLST)" on the same day that she had signed the arbitration agreement and that, in filling out the form, Phyllis's doctor checked a box stating "Patient (Patient has capacity)."

Without holding an evidentiary hearing, the trial court issued an order denying the motion to compel arbitration based on a finding that "Phyllis Boldt lacked capacity to enter the Agreement to Arbitrate." Thus, the trial court concluded that the agreement was void. Defendant now appeals from that order.

## II.  ANALYSIS

A.  *Denial of Defendant's Request for an Evidentiary Hearing*

We begin with defendant's argument that the trial court erred in denying its request for an evidentiary hearing on the issue of the arbitration agreement's validity. More specifically, defendant contends that "it was error for the trial court to make affirmative factual and legal findings of incapacity based on a paper record in the presence of disputed facts, and where [defendant] had specifically requested a live evidentiary hearing." In defendant's view, the trial court was required to hold an evidentiary hearing because it would have allowed the court to properly "weigh and evaluate competing evidence and testimony." We agree and reverse.

ORS 36.625(1)(b) governs petitions to compel arbitrations and provides that, when a party opposes a petition for arbitration, "the court shall proceed summarily to decide the issue." As we previously explained in *Green v. Salomon Smith Barney, Inc.*, 228 Or App 379, 385, 209 P3d 333, *rev den*, 347 Or 348 (2009), proceeding "summarily" under that statute "means that the court must decide the issue of arbitrability expeditiously and without a jury." To be clear, although ORS 36.625 requires a court to make decisions promptly and without a jury, it does not prohibit courts from holding evidentiary hearings. Furthermore, nothing in the statute allows a court to bypass factfinding where disputed facts must be resolved. When a trial court is presented with contradictory evidence that requires it to resolve factual disputes in a proceeding where it is acting

"summarily," procedural due process still requires the court to employ procedures sufficient to allow it to actually perform that task. *See Koskela v. Willamette Industries, Inc.*, 331 Or 362, 381, 15 P3d 548 (2000) (stating that when "the decision-maker must resolve factual disputes involving credibility and veracity, due process requires an opportunity for at least some kind of an oral evidentiary hearing").

Here, the trial court made its decision solely on the written record, despite the fact that the parties presented contradicting evidence as to the extent of Phyllis's dementia. The competing evidence as to Phyllis's ability to hold conversation without confusion directly related to her ability to understand the nature of the arbitration agreement and the consequences of entering into it. *See Uribe v. Olson*, 42 Or App 647, 651, 601 P2d 818 (1979) (explaining that evidence central to a determination of capacity includes the person's ability to understand the nature of the transaction and its consequences). As defendant argues on appeal, a hearing was necessary to allow the court to meaningfully evaluate credibility and to assess the weight of that competing evidence. Because the trial court resolved disputed facts based solely on the written record—without holding a hearing, allowing the parties to cross-examine witnesses, or making credibility determinations—it could not meaningfully fulfill its factfinding role. Under these circumstances, we conclude that it was error for the trial court to deny defendant's request for an evidentiary hearing.

B. *Entitlement to a Jury Trial*

We turn to plaintiff's cross-assignment of error in which plaintiff contends that the trial court erred in ruling that he was not entitled to a jury trial on the issue of his mother's capacity to enter into the arbitration agreement. In responding to defendant's motion to compel arbitration, plaintiff requested that, if the court determined that there was "any factual dispute about the capacity of [his mother] to have understood what she signed," the court submit that issue to a jury trial.

At a hearing on defendant's motion to compel arbitration, the trial court focused on the question of whether

the issue of Phyllis's capacity should be decided by a jury or the court. During the hearing, defendant disagreed with plaintiff's contention that he was entitled to a jury trial on that issue. More specifically, defendant argued that "[a]s an equitable defense, the resolution of the issue of 'incapacity' is for the court, and not for a jury." The court requested supplemental briefing from the parties on that issue and, after considering their arguments, the trial court entered an order denying plaintiff's request for a jury trial on the factual issue of his mother's capacity. On appeal, plaintiff renews his argument that he was entitled to have a jury determine whether his mother had capacity to enter into the arbitration agreement.

We begin by returning to the applicable law that governs petitions to compel arbitrations—ORS 36.625. Under that statute, where one party moves to compel arbitration and where the other party opposes that motion, then "the court shall proceed summarily to decide the issue as provided in subsection (8) of this section and order the parties to arbitrate unless it finds that there is no enforceable agreement to arbitrate." ORS 36.625(1)(b). Subsection (8) then provides that

> "[a] judge shall decide all issues raised under a petition filed under [ORS 36.625] unless there is a constitutional right to a jury trial on the issue. If there is a constitutional right to jury trial on an issue, the issue shall be tried to a jury upon the request of any party to the proceeding."

Thus, to resolve plaintiff's cross-assignment of error, we must determine whether he has a constitutional right to a jury trial on the issue of his mother's capacity to enter into an enforceable arbitration agreement.

Article I, section 17, of the Oregon Constitution provides that "[i]n all civil cases the right of Trial by Jury shall remain inviolate." That constitutional provision "guarantees a right to jury trial for all civil claims or requests for relief, absent a showing that the nature of the particular claim or request at issue is such that it would have been tried to a court without a jury at common law." *State v. N. R. L.*, 354 Or 222, 225-26, 311 P3d 510 (2013). In other words, "whether the Article I, section 17, jury trial right applies in a case

depends on whether the case is one in which the right to a jury trial was customary at the time the Oregon Constitution was adopted or is of like nature." *State/Klamath County v. Hershey*, 370 Or 200, 207, 515 P3d 899 (2022) (internal quotation marks omitted). One indication that the request for relief would have been tried to a court without a jury at common law is that the relief sought is equitable, as opposed to legal. *Id.* at 204; *see Deep Photonics Corp. v. LaChapelle*, 368 Or 274, 287, 491 P3d 60 (2021) (explaining that the distinction between legal and equitable relief hinges on the nature of the relief requested, with monetary damages being legal and remedies requiring judicial discretion being equitable).

Oregon follows an "issue-by-issue" approach in determining whether a party has a right to a jury trial on a particular issue. *See M. K. F. v. Miramontes*, 352 Or 401, 425-26, 287 P3d 1045 (2012) (adopting the issue-by-issue approach to jury trial rights). Under that approach, "'[t]he availability of jury trial must be separately determined for different issues when a case arises presenting both legal and equitable issues.'" *Id.* at 421 (quoting Frederic R. Merrill, *Abolishing Procedural Distinctions Between Actions at Law and Suits in Equity; Right to Jury Trial, ORCP 2*, in Oregon Law Institute, 1980 Civil Procedure Rules 224 (1979)). In the event that a case involves both legal and equitable issues, "it should be the nature of the particular issue in the proceeding, rather than that of the entire proceeding, which should dictate whether this issue is to be tried with or without a jury." *Cornelison v. Seabold*, 254 Or 401, 406, 460 P2d 1009 (1969).

Here, the ultimate claim at issue is one of wrongful death—a claim for which plaintiff seeks damages, a relief that is legal in nature. *See Miramontes*, 352 Or at 414 ("A claim seeking only monetary compensation for injuries inflicted is an 'action at law,' and the constitution, by its terms, preserves the right to jury trial for such legal claims."). As such, in the absence of any enforceable arbitration agreement, plaintiff would be entitled to a jury trial on his claim of wrongful death. However, under the issue-by-issue approach that we follow, determining whether plaintiff is entitled to a jury trial on the issue of his mother's capacity

is a separate issue. That question arises in the context of defendant's motion to compel arbitration, which is a request for specific performance of the arbitration agreement. *See Phillips v. Johnson*, 266 Or 544, 549, 514 P2d 1337 (1973) ("[S]uits in equity, including suits for specific performance of contracts, are ordinarily to be tried to a court without a jury and that the constitutional right to trial by jury does not apply to suits in equity."). Because a motion to compel arbitration seeks an equitable remedy, the factual issues bearing on the enforceability of the agreement—including plaintiff's claim that his mother lacked capacity—are likewise equitable in nature. *See McDowell Welding & Pipefitting v. US Gypsum Co.*, 345 Or 272, 284-86, 193 P3d 9 (2008) (determining that, because a counterclaim for specific performance was equitable in nature, the plaintiff was not entitled to a jury trial on the factual issues that it raised); *see also Rosenthal v. Great Western Fin. Securities Corp.*, 14 Cal 4th 394, 412, 926 P2d 1061, 1071, 58 Cal Rptr 2d 875, 885 (1996) (similarly concluding that the enforceability of an arbitration agreement posed "an equitable question as to which no jury trial right exists"). As such, no constitutional right to a jury trial attaches. The trial court therefore did not err in denying plaintiff's request for a jury trial on the issue of his mother's capacity.

Reversed and remanded.