(No. 47044.—)

PATHFINDER COMPANY, Appellee, v. THE INDUSTRIAL COMMISSION *et al.*—(Marie Rosa, Appellant.)

*Opinion filed Feb. 5, 1976.—Rehearing denied March 25, 1976.*

Timothy F. Sullivan, of Horwitz, Anesi, Ozmon & Associates, Ltd., of Chicago (Sidney Z. Karasik, of counsel), for appellant.

Sweeney and Riman, of Chicago (Gerald O. Sweeney, of counsel), for appellee.

MR. CHIEF JUSTICE WARD delivered the opinion of the court:

The claimant, Maria Rosa, has appealed from a judgment of the circuit court of Cook County which reversed a decision of the Industrial Commission holding

that the claimant had established her claim of temporary total disability under section 8(b) of the Workmen's Compensation Act (Ill. Rev. Stat. 1973, ch. 48, par. 138.8(b)). The circuit court held that the claimant "did not sustain accidental injuries arising out of and in the course of her employment" with the respondent, Pathfinder Company, and that the decision of the Commission in her favor was contrary to the manifest weight of the evidence. The appeal was directly to this court under Rule 302(a). Ill. Rev. Stat. 1973, ch. 110A, par. 302(a), 58 Ill.2d R. 302(a).

The claimant, a Spanish-speaking woman, worked as a packager and assembler for Pathfinder. On August 26, 1971, she had instructed another employee, Veronica Kapicinski, in the operation of a punch press. The claimant turned away from Miss Kapicinski after she had assured the claimant that she was able to operate the machine. Shortly thereafter the claimant heard cries for help; when she turned, she saw that Miss Kapicinski had caught her hand in the press. The claimant ran and shut off the machine. She reached into the machine to help the injured woman extricate her hand, but the press had already severed the woman's hand up to the wrist. The claimant pulled the severed hand from the machine and fainted at the sight of it. She later testified, through an interpreter, that the next thing she remembered was waking in Resurrection Hospital in Chicago the following day. Her children testified that when they saw their mother shortly after her admission to the hospital she did not recognize them. According to the hospital records the claimant was conscious but a little nervous upon her admission. She was discharged from the hospital the following day with the records showing a final diagnosis of anxiety reaction.

The claimant testified that she returned to her job two weeks later and worked for about a month at the table where the accident had occurred. During this period she said she suffered often from headaches and had difficulty

in seeing. She was then switched, at her request, to other work tables. She also said that she had become afraid of the machines and experienced numbness in her hands and feet. She quit working on December 27, 1971, because she felt too ill to work, and she had not returned to work at the time of the hearing. The claimant testified that she suffers from numbness in the hands and legs and that she is nervous, and suffers often from headaches. She said, too, that she has trouble performing household chores because of the numbness in her hands.

The claimant was hospitalized at Walther Memorial Hospital from January 3 to January 13, 1972, and again from January 25 to February 5, 1972. The hospital records for her first stay show that she was admitted because of a bronchial asthma attack. At the time of her admission, she did not complain of the headaches or numbness that she had claimed since the accident. The records show also that the claimant had tuberculosis in 1950 and that since a relapse in 1954 she is required to take medication to prevent a recurrence. Upon her re-admission to the hospital on January 25, 1972, she complained of having occasional generalized headaches and numbness in her hands and feet. The hospital records for this hospitalization reported she was nervous and high-strung.

Dr. Ben Lichtenstein, who specializes in neurology and psychiatry, testified for the claimant. He said he examined her on July 20, 1972, and concluded that she was suffering from peripheral neuritis and residual anxiety. In his opinion she had not received any physical injury on the day of the accident but she had suffered a great mental shock caused by an alarming sight and this shock could have caused her to faint. The witness said that the claimant's peripheral neuritis could not have been caused or aggravated by this shock. Dr. Lichtenstein testified that when the claimant related the accident to him, it seemed as though she were reliving it and that this "indicates to us

it had a tremendous impact on her consciousness" and that "the memory is [still] there." He admitted that his diagnosis that claimant was suffering from residual anxiety was based solely on what she told him and that "there is nothing objective about this." He considered that the claimant could be cured and that she should be treated by a Spanish-speaking psychiatrist. He testified that the claimant did the best thing by trying to return to work as soon as possible after the accident.

Dr. Marshal I. Matz, a neurologist, was a witness for the respondent. He said that he felt claimant might be suffering from peripheral neuropathy which might be caused by her taking the drug isonisid to control her tuberculosis. Her complaints about numbness were, in his opinion, fictitious, and he testified that "the patient had excellent facility in use of her four extremities." Dr. Matz also stated that he felt claimant tried to fake the results of the pin-prick and muscle-strength tests that he gave her. He admitted on cross-examination that he did not have a specialty in psychiatry and that he did not attempt a psychiatric examination of her.

The arbitrator's finding was that the claimant was temporarily disabled. The respondent appealed to the Industrial Commission and in a hearing before the Commission, presented the testimony of Dr. Alex J. Arieff, a specialist in neurology and psychiatry. Dr. Arieff testified that he examined the claimant on November 15, 1973, and found no objective evidence of any organic disease. In response to a hypothetical question, he stated that there was no causal connection between the claimant's witnessing the accident and her complaints of ill-being. He considered that her complaints of numbness could be attributed to anxiety; but he also felt that her anxiety was a secondary condition and could be due more to the fact that she has suffered from chronic asthmatic attacks. He said: "There may be some anxiety residual in her memories from the accident but I don't believe that is her

disability." It was his opinion that she was not receiving adequate medical care, that she should receive medical treatment for all her medical problems and that, if her asthma was properly treated, she would be able to return to work. He concluded his testimony by saying that numbness is subjective and does not disable.

The claimant contends here that she did sustain an injury arising out of and in the course of her employment in that she received a severe emotional shock which caused her present psychological problems. She further argues that the circuit court erred when it held that the decision of the Commission was contrary to the manifest weight of the evidence.

A question we must consider is whether the circuit court erred in holding that the award by the Industrial Commission was contrary to the manifest weight of the evidence. But prior to considering that question we must decide the underlying question of whether an employee who suffers a sudden, severe emotional shock, traceable to a definite time and place and to a readily perceivable cause, which produces psychological disability, can recover under the Workmen's Compensation Act (Ill. Rev. Stat. 1973, ch. 48, par. 138.1 *et seq.*), though the employee suffered no physical injury. We can decide this independently of our common law holdings in tort that deal with the question of whether one may be liable for negligently causing mental distress or harm when there was no physical trauma or impact with the victim. (See *Braun v. Craven*, 175 Ill. 401; *Elgin, Aurora and Southern Traction Co. v. Wilson*, 217 Ill. 47; *McCullough v. Orcutt*, 14 Ill. App. 2d 513; *Holden v. Kayser Roth Corp.*, 92 Ill. App. 2d 240; *Corey v. Hiberly*, 346 F.2d 368 (7th Cir. 1965); see generally W. Prosser, Law of Torts, sec. 12, at 54 (4th ed. 1971); Note, *Negligent Infliction of Mental Distress*, 20 DePaul L. Rev. 1029 (1971); Note, *Negligence and the Infliction of Emotional Harm: A Reappraisal of the Nervous Shock Cases*, 35 U. Chi. L. Rev. 512 (1968); but

see *Knierim v. Izzo,* 22 Ill.2d 73, 80.) Holdings in tort cases are not controlling under the Workmen's Compensation Act. The Act is remedial in nature in that it is intended to provide financial protection for the injured worker. (*Board of Education v. Industrial Com.,* 53 Ill.2d 167; *Colclasure v. Industrial Com.,* 14 Ill.2d 455.) The costs incurred by the allowance of claims are borne by the employer. (*Hays v. Illinois Terminal Transport Co.,* 363 Ill. 397; *Faber v. Industrial Com.,* 352 Ill. 115.) The rights and remedies of the employee are statutory and are not common law rights. Under this statutory right of compensation he may receive an award without having to show negligence on the part of the employer, and he need not show he was free from any contributory negligence (*Imperial Brass Manufacturing Co. v. Industrial Com.,* 306 Ill. 11), but he cannot invoke common law tort remedies against the employer.

It has been consistently held that the Act should be liberally construed to accomplish its purposes and objects. (*Board of Education v. Industrial Com.,* 53 Ill.2d 167; *Zimmerman v. Industrial Com.,* 50 Ill.2d 346; *McDonald v. Industrial Com.,* 39 Ill.2d 396.) We have held broadly that the term "accident" is not "a technical legal term but encompasses anything that happens without design or an event which is unforeseen by the person to whom it happens" (*International Harvester v. Industrial Com.,* 56 Ill.2d 84, 88), and that a psychological disability is not of itself noncompensable under the Workmen's Compensation Act (*Allis Chalmers Manufacturing Co. v. Industrial Com.,* 57 Ill.2d 257, 262-63; *City of Chicago v. Industrial Com.,* 59 Ill.2d 284, 287). We must conclude that an employee who, like the claimant here, suffers a sudden, severe emotional shock traceable to a definite time, place and cause which causes psychological injury or harm has suffered an accident within the meaning of the Act, though no physical trauma or injury was sustained.

Though admittedly we have not heretofore considered

the precise question before us now this court has allowed claimants to recover for psychological disability or injury where the physical contact and injury were minor. For example, recovery was allowed in *Marshall Field & Co. v. Industrial Com.*, 305 Ill. 134, where the claimant injured a thumb and was severely jarred when she slipped and fell. She worked for two weeks after the accident and then left the employ of Marshall Field for a year. She returned to her employment for about eight months, but became very agitated when her possible transfer to another department was discussed. She left work and did not return. There was medical evidence offered that she was suffering from major hysteria. This court affirmed the Commission's award in the claimant's favor for permanent total disability based solely on her psychological disability. In *Olin Industries, Inc. v. Industrial Com.*, 394 Ill. 202, the claimant was injured while cleaning a machine when a metal guard weighing 75 pounds struck her across the right breast. She suffered no broken bones and the treating physician testified that his examination showed "there were no bruises or objective evidence of injury and that the diagnosis of contusion of the chest was based on subjective complaints and history." (*Olin Industries,* at 204.) The diagnosis was traumatic neurosis caused by the injury, and her award was affirmed by this court. Other holdings of awards for psychological disability when there was some physical injury include: *City of Chicago v. Industrial Com.*, 59 Ill.2d 284; *Spetyla v. Industrial Com.*, 59 Ill.2d 1; *Hook v. Industrial Com.*, 53 Ill.2d 245; *Thomas J. Douglas and Co. v. Industrial Com.*, 35 Ill.2d 100; *Ford Motor Co. v. Industrial Com.*, 355 Ill. 490; *Postal Telegraph Cable Co. v. Industrial Com.*, 345 Ill. 349; *Armour Grain Co. v. Industrial Com.*, 323 Ill. 80; *United States Fuel Co. v. Industrial Com.*, 313 Ill. 590.

We conclude there is little to support a rule that allows an award for a claimant under the Workmen's Compensation Act who is suffering from psychological

disabilities caused by an often minor physical injury but denies an award to a claimant with a similar psychological disability brought about, as here, by a sudden, severe emotional shock and who fortuitously did not sustain any physical injury in his accident. Illustrating this, Larson (A. Larson, The Law of Workmen's Compensation) has observed:

"Against the rather old-fashioned clinging to some shred of the 'physical' in these cases, must be balanced the fact that, once this shred has been found, awards issue that require recognition of some of the most sophisticated theories of the interaction of mind and body of some of the most complex neurotic conditions, including 'compensation neuroses.' As to the category of mental stimulus causing nervous injury, with no 'physical' involvement, although the cases are now sharply divided, the strength of the trend toward coverage suggests that the time is perhaps not too far off when compensation law generally will cease to set an artificial and medically unjustifiable gulf between the 'physical' and the 'nervous.' The test of existence of injury can then be greatly simplified. The single question will be whether there was a harmful change in the human organism—not just its bones and muscles, but its brain and nerves as well." (Larson, *Mental & Nervous Injury in Workmen's Compensation*, 23 Vand. L. Rev. 1243, 1260 (1970).)

Also advocating this view: Render, *Mental Illness As An Industrial Accident*, 31 Tenn. L. Rev. 288 (1964); Note, *Workmen's Compensation Awards For Psychoneurotic Reactions*, 70 Yale L.J. 1129 (1961). See also 1A A. Larson, The Law of Workmen's Compensation, sec. 42.23 (1973), where he has noted that the majority of courts which have considered the question now allow an award on the basis of psychological injury alone.

Holdings on this question in which awards were denied include: Arizona, *Shope v. Industrial Com.*, 17 Ariz. App. 23, 495 P.2d 148 (1972); Georgia, *Brady v. Royal Manufacturing Co.*, 117 Ga. App. 312, 160 S.E.2d 424 (1968); Kansas, *Jacobs v. Goodyear Tire &*

*Rubber Co.,* 196 Kan. 613, 412 P.2d 986 (1966); Louisiana, compare *Johnson v. Hartford Accident & Indemnity Co.,* 196 So. 2d 635 (La. App. 1967), with *Ferguson v. HDE, Inc.,* 270 So. 2d 867 (1972), overruling in part *Danziger v. Employers Mutual Liability Insurance Co.,* 245 La. 33, 156 So. 2d 468 (1963); Nebraska, *Bekeleski v. O.F. Neal Co.,* 141 Neb. 657, 4 N.W.2d 741 (1942). Holdings affirming awards include: Arizona, *State Compensation Fund v. Industrial Com.,* 24 Ariz. App. 31, 535 P.2d 623 (1975); *Brock v. Industrial Com.,* 15 Ariz. App. 95, 486 P.2d 207 (1971); California, *Baker v. Workmen's Compensation Appeals Board,* 18 Cal. App. 3d 852, 96 Cal. Rptr. 279 (1971); Michigan, *Carter v. General Motors Corp.,* 361 Mich. 577, 106 N.W.2d 105 (1960); *Rainko v. Webster-Eisenlohr, Inc.,* 306 Mich. 328, 10 N.W.2d 903 (1943); Missouri, *Todd v. Goostree,* 493 S.W.2d 411 (Mo. App. 1973); New York, *Wolfe v. Sibley, Lindsay & Curr Co.,* 36 N.Y.2d 505, 369 N.Y.S.2d 637, 330 N.E.2d 603 (1975); Texas, *Bailey v. American General Insurance Co.,* 154 Tex. 430, 279 S.W.2d 315 (1955); Virginia, *Burlington Mills Corp. v. Hagood,* 177 Va. 204, 13 S.E.2d 291 (1941). We consider the latter holdings are to be preferred.

We would add that we cannot accept the employer's contention that the claimant here is barred from recovering by section 8(b)(7) of the Workmen's Compensation Act (Ill. Rev. Stat. 1973, ch. 48, par. 138.8(b)(7)). The section provides:

> "All compensation payments named and provided for in paragraphs (b), (c), (d), (e) and (f) of this Section, mean and are defined to be for accidental injuries and only such accidental injuries as are proven by competent evidence, of which there are or have been objective conditions or symptoms proven, not within the physical or mental control of the injured employee himself."

It is not disputed that the claimant fainted following her gruesome experience and was taken to the hospital by

her employer. Hospital records showed her receiving sedating drugs and her nervous condition upon admission and discharge. We consider there were objective symptoms of accidental injury within the Act's meaning. (*Olin Industries, Inc. v. Industrial Com.*, 394 Ill. 202, 207.) Too, it is to be noted that the section refers to objective conditions or symptoms of accidental injury, not of disability. We observed in *City of Chicago v. Industrial Com.*, 59 Ill.2d 284, 289:

"It must be emphasized that the provision of the statute requires that the objective conditions or symptoms which must be present relate only to the accidental injuries for which compensation is sought. It does not require that there be findings of objective symptoms or conditions of disability. *Martin Young Enterprises, Inc. v. Industrial Com.*, 51 Ill.2d 149; *Electro-Motive Division, G.M.C. v. Industrial Com.*, 32 Ill.2d 35."

We do not consider there should be fears that holding as we do will encourage the filing of claims by malingering employees. There is no suggestion in the cases or other authorities that this has occurred in the jurisdictions permitting such awards and our own Commission has not experienced this problem through its allowance of awards for psychological disabilities or injuries. This is not to say of course that the Commission need not continue to be vigilant in the assessment of claims which might be easily fabricated or exaggerated.

We do not judge the award here was contrary to the manifest weight of the evidence. The claimant experienced a sudden, severe emotional shock, which would be the reaction of a person of normal sensibilities who, attempting to aid an injured co-worker, reached in and drew a severed hand from the press. There was conflicting testimony presented concerning the cause of her psychological disability. It is clear that where there is conflicting medical testimony it is for the Commission to determine

which testimony it will prefer and accept (*Moore v. Industrial Com.*, 60 Ill.2d 197; *Pontiac Chair Co. v. Industrial Com.*, 59 Ill.2d 261; *Hartwell v. Industrial Com.*, 51 Ill.2d 562), and a court will not disturb the finding unless it is contrary to the manifest weight of the evidence (*Converters, Inc. v. Industrial Com.*, 61 Ill.2d 218; *Proctor Community Hospital v. Industrial Com.*, 41 Ill.2d 537). We do not consider that this is the case here, and, accordingly, the judgment of the circuit court of Cook County is reversed.

*Judgment reversed.*