THE CITY OF SPRINGFIELD, Appellant, v. THE INDUSTRIAL COM-MISSION *et al.* (B.K., Appellee).

Fourth District   No. 4—95—0926WC

Argued May 22, 1997.—Opinion filed June 30, 1997.—Rehearing denied October 21, 1997.

Robert M. Rogers, Corporation Counsel, of Springfield (Peggy J. Witt (argued) and Kevin J. Hubbart, Assistant Corporation Counsel, of counsel), for appellant.

Patricia L. Hayes (argued), of Springfield, for appellee.

JUSTICE HOLDRIDGE delivered the opinion of the court:

Respondent, City of Springfield, appeals from an order of the Industrial Commission (Commission) that awarded benefits to B.K. (claimant) for a psychological injury suffered after her supervisor forced her to engage in five acts of nonconsensual sexual intercourse over a five-month period of time. Claimant maintains she suffers

from debilitating depression because of the assaults. Respondent maintains that the five encounters were consensual and that claimant suffered no physical trauma from which her present psychological condition could have arisen. At issue is whether the Commission erred in finding claimant established a compensable psychic injury under the "physical-mental injury" theory of compensability. See *Pathfinder Co. v. Industrial Comm'n*, 62 Ill. 2d 556, 563, 343 N.E.2d 913, 917 (1976). For the reasons discussed below, we affirm the decision of the Commission.

Because the parties and this court are familiar with the facts of this case, it is unnecessary to recite them at length. Only those facts necessary to an understanding of our disposition of this matter will be discussed.

Claimant testified that during the period August 1991 through January 1992, her supervisor made verbal and physical sexual advances toward her and forced her to engage in nonconsensual intercourse on at least five occasions at work and elsewhere. Claimant testified that although she resisted and told him "don't," he continued to grab her, pin her down, and pin her against walls. Claimant also testified that, on one occasion, while she was resisting his advances, he mentioned the name of another female coworker and implied that she could take claimant's job. Claimant stated that she did not report this conduct because she was afraid no one would believe her and she was afraid of losing her job.

In February 1993, after hearing that another female coworker had filed sexual harassment charges against the same supervisor, claimant reported her incidents to her supervisor's superiors. Thereafter, claimant became very emotional, could not sleep, and was frightened to be at work. After the incidents became public, she stated that she was isolated by coworkers, some of whom verbally and physically confronted her. She was made the subject of graffiti and made to sit next to her supervisor during certain meetings. Claimant was removed from the direct supervision of the supervisor who allegedly assaulted her.

Claimant testified that during March 1993, she had contemplated suicide. On April 15, 1993, claimant sought counseling from Kevin McAvoy, a clinical psychologist under contract to the respondent's employee assistance program. He diagnosed claimant as suffering from generalized anxiety disorder and post-traumatic stress disorder due to the sexual harassment and assaults at work.

McAvoy referred claimant to Mary Ossowski, a clinical social worker, who first counseled claimant on April 26, 1993. Ossowski treated claimant "for therapeutic issues arising from the personal

trauma of being a victim of sexual harassment in her work place." Ossowski referred claimant to a psychiatrist, Dr. Joseph Bohlen, who gave an initial diagnosis of adjustment disorder with depressed mood. He treated her with antidepressants and placed her in group therapy for victims of sexual harassment. After further tests and consultations, Dr. Bohlen diagnosed major depression, single episode.

On June 29, 1994, claimant was demoted and reassigned to work under the supervision of the supervisor who allegedly assaulted her. Ossowski noted that claimant's demotion, coupled with the fact that she was forced to work again under that particular supervisor, caused undue emotional distress, and it would have created irreparable emotional harm to claimant if she stayed in such environment. Claimant has not reported to duty as ordered since June 29, 1994.

On July 18, 1994, Dr. Bohlen removed claimant from work due to her emotional state. He opined that there was a high likelihood that claimant's depression and anxiety were reactive, and their onset was caused by the sexual harassment she received at work, noting that as the conditions at work worsened, so did her depression. He opined further that claimant showed all the signs of adult sexual abuse, and the fact that she had been the victim of child abuse made the adult sexual abuse more debilitating. Dr. Bohlen explained that a position of authority is often used in place of physical force and may be more damaging. He believed claimant viewed her demotion as punishment for making the allegations against her supervisor and opined claimant could not return to work.

At the arbitration hearing, the respondent attempted to establish that the sexual encounters between claimant and her supervisor had been completely consensual. However, the supervisor alleged to have assaulted claimant did not testify at the arbitration hearing to refute claimant's allegations, and the Department failed to offer any rebutting medical evidence.

The arbitrator determined that claimant had failed to prove an accident arising out of and in the course of her employment and denied claimant benefits on that basis. The Commission, with one dissent, reversed the arbitrator, finding that claimant sustained accidental injuries arising out of and in the course of her employment on April 15, 1993, awarded her temporary total disability benefits in the amount of $712.92 per week for the period of June 24, 1994, through November 7, 1994, and awarded her $7,370 for medical expenses. The circuit court confirmed the Commission, and the respondent appealed.

## ANALYSIS

■ Claimant sought, and the Commission granted, compensation

for mental incapacity allegedly resulting from a work-related injury. In *Pathfinder*, our supreme court held that psychological injuries could be compensable in either of two ways: (1) where the psychological injuries were related to and caused by a physical trauma or injury, *i.e.*, "physical-mental" trauma, or (2) where the psychological injuries were caused by "a sudden, severe emotional shock traceable to a definite time, place and cause which causes psychological injury or harm *** though no physical trauma or injury was sustained," *i.e.*, "mental-mental" trauma. *Pathfinder*, 62 Ill. 2d at 563, 343 N.E.2d at 917. The "mental-mental" theory of recovery is generally recognized as a more difficult basis for trying a case in which the claimant is seeking to prove his or her psychological injury is compensable. See *Chicago Board of Education v. Industrial Comm'n*, 169 Ill. App. 3d 459, 466, 523 N.E.2d 912, 917 (1988). Under the "physical-mental" theory, the work-related physical trauma need not be the sole causative factor, but need only be a causative factor of the subsequent mental condition. See *May v. Industrial Comm'n*, 195 Ill. App. 3d 468, 487, 552 N.E.2d 258, 270 (1990).

Prior to the court's holding in *Pathfinder*, the "physical-mental" theory of recovery had been the only method of establishing compensability for psychological injuries. It was universally accepted in this state that mental disability was compensable "only if it was precipitated by *physical contact* or injury traceable to a definite time, place and cause." (Emphasis added.) *General Motors Parts Division v. Industrial Comm'n*, 168 Ill. App. 3d 678, 685, 522 N.E.2d 1260, 1265 (1988). The *Pathfinder* court also noted that minor physical contact or contact that left no objective manifestation, *i.e.*, bruises, contusions, broken bones, et cetera, was sufficient to cause psychological injuries to be compensable. *Pathfinder*, 62 Ill. 2d at 564, 343 N.E.2d at 917.

In the matter *sub judice*, the Commission analyzed the record based upon the "physical-mental" rather than the "mental-mental" theory of compensation for psychological injuries. The Commission held that the five acts of nonconsensual sexual intercourse between claimant and her supervisor were in the nature of physical assaults upon her and claimant's psychological injuries were therefore caused by a physical "contact," trauma or injury more appropriately analyzed under the "physical-mental" model.

The respondent maintains that the Commission erred in finding that the physical contact between claimant and her supervisor was nonconsensual and therefore in the nature of a physical assault or trauma. Respondent also maintains that the Commission erred in using the "physical-mental" theory. We disagree.

Whether a supervisor's forcing of nonconsensual sexual intercourse upon an employee can constitute physical contact for purposes of establishing compensation for psychological injuries under the "physical-mental" theory is a question of first impression in our courts.

■ After reviewing the case law, we are convinced that the physical contact explicit in nonconsensual sexual intercourse is sufficient to meet the requirement of physical contact necessary for the "physical-mental" trauma theory of recovery. Rape, sexual assault, and battery are all physical bodily injury crimes in Illinois. See 720 ILCS 5/12—13, 12—3 (West 1992). For purposes of battery and aggravated sexual assault, bodily harm may be shown by actual injury, such as bruises, or may be inferred by the trier of fact based upon common knowledge. *People v. Lopez*, 222 Ill. App. 3d 872, 879, 584 N.E.2d 462, 467 (1991). Therefore, we find that it was proper for the Commission to infer that a nonconsensual sexual assault was likely to involve physical trauma, and it was appropriate to characterize claimant's injury as a "physical-mental" trauma, as opposed to a "mental-mental" trauma.

We also reject respondent's contention that the Commission erred in finding that the supervisor's actions caused claimant's psychological injuries. The respondent maintains that no physical trauma took place, as the sexual acts were consensual, and that, therefore, the actions by the supervisor could not have caused claimant's subsequent depression.

■ The question of whether there is a causal connection between a claimant's injury and his or her employment is uniquely within the province of the Commission (*Organic Waste Systems v. Industrial Comm'n*, 241 Ill. App. 3d 257, 260, 608 N.E.2d 1243, 1245 (1993)), and its decision will not be disturbed on review unless it is against the manifest weight of the evidence (*Cognato v. Industrial Comm'n*, 242 Ill. App. 3d 50, 55, 609 N.E.2d 783, 786 (1993)). A finding is not against the manifest weight of the evidence unless an opposite conclusion is clearly evident. *Hicks v. Industrial Comm'n*, 251 Ill. App. 3d 320, 327, 621 N.E.2d 293, 297 (1993).

■ In this case we cannot say that the Commission's conclusion that claimant was physically assaulted by her supervisor is against the manifest weight of the evidence. Claimant's unrefuted testimony described incidents of being held and pinned down, as well as other unconsented physical contact. Although no evidence was presented to show that the incidents were consensual, respondent argued that claimant's conduct in not reporting her supervisor to authorities or otherwise taking steps to protect herself indicate that the acts of

sexual intercourse were consensual. While this inference is plausible, it is well settled that, in resolving questions of fact, it is within the province of the Commission to assess the credibility of witnesses, resolve conflicts in the evidence, assign weight to be accorded the evidence, and draw reasonable inferences from the evidence. *Kirkwood v. Industrial Comm'n*, 84 Ill. 2d 14, 20, 416 N.E.2d 1078, 1080 (1981).

Claimant's unrebutted testimony supports the Commission's conclusion that her supervisor committed repeated sexual assaults against her, and unrefuted medical evidence showed that, as a result, she suffered from post-traumatic stress disorder. It cannot be said, therefore, that the conclusion opposite that of the Commission is clearly apparent from the record.

Finally, we note that it is well settled that a physical assault by a coworker can constitute an accidental injury under the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 1992)). *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 463, 564 N.E.2d 1222, 1226 (1990); *Collier v. Wagner Castings Co.*, 81 Ill. 2d 229, 238, 408 N.E.2d 198, 202 (1980).

Based upon the foregoing, the circuit court of Sangamon County, which confirmed the Commission's finding that claimant proved accidental injuries arising out of in the course of her employment, is affirmed.

Affirmed.

McCULLOUGH, P.J., and RAKOWSKI, COLWELL, and RARICK, JJ., concur.