GLENDA SKIDIS, Appellant, v. THE INDUSTRIAL COMMMISSION *et al.* (The City of Fairview Heights Police Department, Appellee).

Fifth District (Industrial Commission Division)   No. 5—98—0419WC

Opinion filed December 2, 1999.—Rehearing denied January 10, 2000.

Robert G. Wuller, Jr., and Daniel L. Bradley, both of Neville, Richards, De-Franco & Wuller, of Belleville, for appellant.

R. Kent Schultz, of Holtkamp, Liese, Beckemeier & Childress, P.C., of St. Louis, Missouri, for appellee City of Fairview Heights.

William L. Hanks, of Keefe & De Pauli, P.C., of Fairview Heights, for appellee City of Fairview Heights Police Department.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

Claimant, Glenda Skidis, filed five applications for adjustment of claim seeking benefits for stress-induced anxiety, heart arrhythmia, and headaches she allegedly suffered while working as a dispatcher for the Fairview Heights police department. The arbitrator denied benefits, concluding her psychological injury was the product of ordinary on-the-job stress that was not compensable as a matter of law. The Illinois Industrial Commission (Commission) affirmed the arbitrator, and the circuit court confirmed the Commission. Claimant appeals, contending the Commission erred in denying her benefits. We affirm.

Claimant, 61 years of age, worked as a dispatcher for the Fairview Heights police department from January 1974 through the early part of November 1991. Claimant testified that in approximately 1988, she began having problems at work.

■ The issue on appeal is whether the Commission erred in finding claimant failed to establish a compensable psychic injury. In *City of Springfield v. Industrial Comm'n*, 291 Ill. App. 3d 734, 738, 685 N.E.2d 12, 14 (1997), quoting *Pathfinder Co. v. Industrial Comm'n*, 62 Ill. 2d 556, 563, 343 N.E.2d 913, 917 (1976), this court held that psychological injuries could be compensable under either of two ways:

"(1) where the psychological injuries were related to and caused by a physical trauma or injury, *i.e.*, 'physical-mental' trauma, or (2) where the psychological injuries were caused by 'a sudden, severe emotional shock traceable to a definite time, place[,] and cause which causes psychological injury or harm *** though no physical trauma or injury was sustained,' *i.e.* 'mental-mental' trauma."

Because employment conditions in themselves may produce stress, the "mental-mental" theory of recovery is generally recognized as a more difficult basis for claimant to prove that his or her psychological injury is compensable. See *Chicago Board of Education v. Industrial Comm'n*, 169 Ill. App. 3d 459, 466, 523 N.E.2d 912, 917 (1988).

■ In the instant case, claimant told her physicians, when she first sought treatment, that the police department had grown in size over the years, as had the workload and demands of productivity, and that affected everyone. Claimant also told her doctors that certain other events contributed to her anxiety. These included her son joining the Marines in the early 1980s, her ex-husband dying from cancer, her fiancé dying of a heart attack, the Rodney King incident, the Gulf War, a mammogram she underwent, and her fear of developing Alzheimer's disease; she felt like a prisoner, lacked confidence, and was socially withdrawn.

The medical evidence consisted of the depositions of Dr. Raza, a psychiatrist, and Dr. Ruffy, a psychologist who treated claimant beginning in April 1990. Based on claimant's reports of panic attacks, paresthesia, appetite fluctuation, difficulty sleeping, and crying spells, Raza came to a diagnosis of adjustment disorder with anxiety. Claimant's report that her job of 16 years had become stressful but she was unable to quit because she was not in a secure enough financial position to take early retirement led to his conclusion that her condition was a reaction to environmental stress emanating from work. Dr. Ruffy reached essentially an identical diagnosis. Both continued to treat claimant at least on a weekly basis up to the time of arbitration. In Raza's opinion, claimant could not return to work. His final diagnosis was adjustment disorder with mixed emotional features, which represented claimant's subjective responses to what he believed to be her job-related stress. Raza concluded claimant's condition built up over time and no one single incident triggered it.

The deposition of Dr. Stillings, a psychiatrist and examining physician, was offered by respondent. Stillings disagreed with the diagnoses of claimant's treating physicians. In Stillings' opinion, he found no definable psychiatric illness beside possible paranoia, which he concluded was not job-related because it was a genetically caused biochemical disturbance. In Stillings' opinion, claimant is able to work at her former job, although she might benefit from further psychiatric treatment for her paranoia. The Industrial Commission's decision affirming the arbitrator's determination that claimant failed to meet her burden of proof is not against the manifest weight of the evidence.

In her brief, claimant states she was subjected to derogatory racial and sexual slurs from time to time which, she concludes, should qualify as sudden, severe emotional shocks under the test set out in *Pathfinder*. We disagree. Claimant did not testify that any of these comments were made in proximity to any of the dates she alleged as the date of injury in her applications for adjustment of claim. In addition, she testified she only reported two of these incidents to higher authorities during

the five years in which, she alleged, they occurred routinely. This court has previously rejected similar claims in *General Motors Parts Division v. Industrial Comm'n*, 168 Ill. App. 3d 678, 522 N.E.2d 1260 (1988), in which an employee supervisor verbally assaulted claimant with profane, racial slurs that caused claimant to become mentally ill. In that case, this court denied compensation, as a matter of law, holding that the event was nontraumatic and not out of proportion to the incidents of normal employment activity. *General Motors*, 168 Ill. App. 3d at 687, 522 N.E.2d at 1266. There, as here, no physical trauma was involved.

Claimant also contends that being "fired" constitutes a sufficiently sudden and severe emotional shock within the ambit of *Pathfinder*. Again we disagree. First, the record does not support claimant's conclusion she was "fired." Although on direct examination claimant testified her supervisor, Dennis Knolhoff, told her she could not return to work, the chief of police, Roger A. Richards, testified claimant was to be advised that she would need a doctor's release before she could return to work, and claimant conceded upon rebuttal that Knolhoff's conversation was to the effect that she could not return until her disability claim was resolved. This evidence falls short of suggesting that claimant established her employment was terminated. If anything, this evidence suggests only a temporary cessation of employment with her return to work dependent upon the outcome of her disability application. When coupled with other evidence that claimant had initiated discussions about seeking disability benefits months earlier, it is difficult to conclude that the mention of disability by her supervisors could have been a shocking event.

Moreover, even if we were to construe the evidence liberally in claimant's behalf, we would reject her argument. In *Esco Corp. v. Industrial Comm'n*, 169 Ill. App. 3d 376, 523 N.E.2d 589 (1988), this court denied compensation to a claimant who suffered a myocardial infarction several months after being fired. In doing so, this court observed: "Transfers, demotions, new responsibilities, and layoffs or terminations are normal and expected conditions of employment life, along with the accompanying insecurity and worry." *Esco Corp.*, 169 Ill. App. 3d at 384, 523 N.E.2d at 593. Thus, the routine involuntary termination of employment, although traumatic, does not, of itself, constitute an event sufficient to bring it within the confines of *Pathfinder*.

At oral argument, for the first time, claimant raised the argument that this is a "physical-mental" rather than a "mental-mental" case based on claimant's physical manifestation of injury in the form of arrhythmia. Although claimant's counsel suggests he raised this issue

before the Commission and circuit court, the record on appeal does not contain claimant's petition for review before the Commission, and the trial brief, which is virtually identical to claimant's brief on appeal, makes no mention of it. Accordingly, we conclude the issue is waived. Even if waiver did not apply, however, we disagree with claimant's argument. The presence of a physical trauma, not an employee's subjective physical reaction to some nonphysical incident, determines whether a case qualifies as a "physical-mental" case. Except for claimant's unsubstantiated testimony that she suffered a heart arrhythmia on several occasions, no medical evidence in this record supports that contention. We reject claimant's contention.

Finally, without any argument in support, claimant states that the rationale of *General Motors* and the line of cases that have followed it has never been adopted by the supreme court and work-related repetitive trauma is compensable without the necessity of pinning it to a specific incident traceable to a definite time, place, or cause under *Peoria County Belwood Nursing Home v. Industrial Comm'n*, 115 Ill. 2d 524, 505 N.E.2d 1026 (1987). Statements unsupported by argument or citation to relevant authority will not be considered, and this court will not become the advocate for, as well as the judge of, points an appellant seeks to raise. *Holmstrom v. Kunis*, 221 Ill. App. 3d 317, 325, 581 N.E.2d 877, 882 (1991).

The question of whether a causal connection exists between a claimant's injury and his or her employment is uniquely within the province of the Commission (*Organic Waste Systems v. Industrial Comm'n*, 241 Ill. App. 3d 257, 260, 608 N.E.2d 1243, 1245 (1993)), and its decision will not be disturbed on review unless it is against the manifest weight of the evidence. *Cognato v. Industrial Comm'n*, 242 Ill. App. 3d 50, 55, 609 N.E.2d 783, 786 (1993). In this case, claimant has failed to demonstrate that her mental condition is the product of anything other than the normal stress associated with employment, coupled with problems arising from relationships and events in her personal life, and it is not compensable. The Commission's decision is not against the manifest weight of the evidence.

Accordingly, the judgment of the circuit court of St. Clair County is affirmed.

Affirmed.

RAKOWSKI, COLWELL, HOLDRIDGE, and RARICK, JJ., concur.