NORTHWEST SUBURBAN SPECIAL EDUCATION ORGANIZATION, Appellant, v. THE INDUSTRIAL COMMISSION *et al*. (James Taylor, Appellee.)

First District (Industrial Commission Division) No. 1—99—1956WC

───────

Opinion filed February 29, 2000.—Rehearing denied April 14, 2000.

John E. Gilhooly, of Wiedner & McAuliffe, Ltd., of Chicago, for appellant.

Arnold G. Rubin, of Arnold G. Rubin, Ltd., of Chicago, for appellee.

JUSTICE RARICK delivered the opinion of the court:

Claimant, James Taylor, sought benefits pursuant to the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1991, ch. 48, par. 138.1 *et seq.*) for his condition of ill-being allegedly stemming from an incident that occurred on February 22, 1991, while in the employ of Northwest Suburban Special Education Organization, employer. The arbitrator determined claimant sustained accidental injuries arising out of and in the course of his employment and awarded claimant $212^3/_7$ weeks of temporary total disability benefits as well as wage differential benefits under section 8(d)(1) of the Act for the duration of his disability. On review, the Industrial Commission (Commission), with one dissent, affirmed the decision of the arbitrator, and the circuit court of Cook County confirmed the decision of the Commission. Employer appeals, contending the decision awarding claimant benefits is against the manifest weight of the evidence and contrary to law.

Claimant worked for employer as a teacher at a school for children with behavioral disorders. He had been employed in that capacity for

some nine years. Because of their problems, claimant testified the students often acted up and were sometimes violent and hyperactive. On February 22, 1991, claimant was teaching a class of 11 students ages 13 to 16 years old. At approximately 12:50 p.m., claimant moved the class to the home economics room. Two of the students began fighting over their seats. Claimant asked one of the students to step out into the hallway with him. As they were moving out into the hallway, the student kicked out the side window next to the classroom door. Claimant instructed the student to sit in the hallway and asked the teacher's aide to bring back the classroom's social worker, Mr. Stone. Mr. Stone and claimant had worked together some seven years. Claimant testified Stone would meet with his students twice a week and would also be called whenever there were altercations.

The teacher's aide found Stone in another classroom in the middle of a session. Stone was reluctant to leave the classroom but eventually agreed to do so. According to the aide, as they approached the home economics room, Stone became agitated. According to claimant, Stone came up to him and asked why the incident occurred. Claimant believed Stone was almost out of control and belligerent. Stone started pointing his fingers at claimant, and claimant told Stone to get his fingers out of his face. Claimant testified that by this time he was backed up against the classroom door and Stone's fingers were within inches of his eyes. Believing he was being attacked, claimant then grabbed Stone's hand and moved him away from his body. When he released his hands, Stone fell to the floor. Claimant did not feel that he used excessive force but, rather, that Stone fell because he was ill and frail. Other school personnel arrived, ending the encounter between claimant and Stone. Claimant testified he was upset about the situation but such things happen a lot in that school and "you just get used to them."

The following Monday, claimant was summoned to the principal's office and was advised he was being temporarily relieved of his teaching duties and reassigned to the administrative building. Claimant was suspended for a period of 15 days after which he returned to his classroom and continued in his normal teaching capacities through the end of the school year. Claimant testified, however, that during this period he became physically ill and developed continuing sinus problems. His concentration became worse and he was agitated and nervous. Claimant testified he felt terrible that he had been suspended and removed from his classroom when he was not guilty of any wrongdoing. By December 1991, claimant came under the care of Dr. Devine, a psychologist, for help in dealing with his anger. Claimant was found to have the profile of a paranoid personality disorder.

On March 19, 1992, claimant was involved in another incident at school. Two of his students began fighting and throwing desks. Claimant testified he took one of the students to the floor and held onto him in an effort to break up the fight. The boy was then escorted out of the room. The principal later removed claimant from the classroom and assigned him once again to the administration building. According to claimant, the reason for the reassignment stemmed from a complaint filed by the student's parents alleging the child was injured by claimant's actions. Claimant's doctors authorized him off work as of April 25, 1992. Claimant's psychiatrist, Dr. Mitchell R. Halper, diagnosed claimant as suffering from a major depressive disorder secondary to a posttraumatic stress disorder with a subsequent diagnosis of paranoid personality disorder. Dr. Halper testified he believed the February 1991 incident was a traumatic episode and a major causative factor leading to claimant's depression and his inability to contain his paranoid disorder. Claimant's perceived harassment from school personnel and continued court involvement over the incident directly impacted on claimant's emotional health thereby increasing his paranoia. Dr. Halper acknowledged that claimant had a paranoid personality disorder prior to the February incident, for, by definition, such disorders are always present, and that it probably existed since childhood but was dormant prior to the February incident. Because claimant's paranoid personality disorder is now permanent, Dr. Halper testified claimant was not capable of performing any duties as a special education teacher. According to Dr. Halper, his condition impacts on his ability to perform any work-related activity in that he has difficulty interacting with people. Claimant now works for Burpee Seed Company putting up displays in various stores. He is employed as an independent contractor and works approximately 30 hours per week.

Employer presented evidence that during the period from February 1991 to March 1992 claimant was also undergoing a great deal of personal stress. Claimant learned shortly after the incident that his wife was pregnant, and he was overly concerned about having a child so late in his life. Claimant was in his 40s. Claimant reported the pregnancy and delivery were quite difficult. Claimant was also suffering from several allergy problems and walking pneumonia during this time, had his wisdom teeth removed and was involved in an automobile accident in which his car was totaled and he sustained physical injuries. Claimant also went through criminal and disciplinary proceedings pertaining to the February incident.

Employer further introduced the testimony of Stone via the trial transcript from the criminal proceedings as Stone had passed away before the arbitration hearing. Stone testified that, upon his arrival at

the classroom, claimant was standing by the doorway. He asked claimant what had happened. Claimant responded: "It depends upon who you ask and this isn't the time to discuss why it happened." Stone answered, "I didn't ask you why it happened. I asked you what happened." He then added, "Don't put words in my mouth," following which claimant yelled, "Don't put your fingers in my face." Stone admitted he was gesturing with his hands as he often did when communicating with others. He testified he had no intention of touching claimant and was some two to three feet away from him when claimant grabbed him by the shoulders and threw him to the ground. Stone was afraid claimant was about to come after him again when the custodian stepped in between them. Claimant was later acquitted of the battery charges against him in relation to this incident.

Other school personnel who witnessed various parts of the incident all testified claimant physically threw Stone to the ground by grabbing him on the shoulders. Many of these same witnesses testified that there were times claimant would "fly off the handle" over various things, that claimant often did not participate in class team discussions, that he was known to be verbally aggressive in his interactions with students and staff, and that he kept tape around his desk to keep students away. The arbitrator found these witnesses not credible because of their dislike of claimant. The arbitrator further concluded claimant was the nonaggressor in the situation. And, because the altercation arose out of and in the course of a dispute involving a work-related matter, claimant's psychological injuries arising from the altercation were compensable. The Commission concluded the altercation with Stone produced the physical contact necessary for a "physical-mental" case and agreed claimant was entitled to compensation.

■ Generally speaking, psychological injuries are compensable when the injuries are related to and caused by a physical trauma or injury ("physical-mental") or when the injuries are caused by sudden severe emotional shock traceable to a definite time and place and cause even though no physical trauma or injury was sustained ("mental-mental"). *City of Springfield v. Industrial Comm'n*, 291 Ill. App. 3d 734, 738, 685 N.E.2d 12, 14 (1997). Recovery for nontraumatically induced mental disease is limited to those employees who can establish that: (1) the mental disorder arose in a situation of greater dimensions than the day-to-day emotional strain and tension that all employees must experience; (2) the conditions exist in reality, from an objective standpoint; and (3) the employment conditions, when compared with the nonemployment conditions, were the major contributing cause of the mental disorder. *Runion v. Industrial*

*Comm'n*, 245 Ill. App. 3d 470, 473, 615 N.E.2d 8, 10 (1993). Consequently, claims for mental disabilities resulting from arguments with coworkers and/or supervisors have been denied (see *City of Springfield v. Industrial Comm'n*, 214 Ill. App. 3d 301, 573 N.E.2d 836 (1991); *General Motors Parts Division v. Industrial Comm'n*, 168 Ill. App. 3d 678, 522 N.E.2d 1260 (1988)), as have been claims following disciplinary actions taken by employers (see *Esco Corp. v. Industrial Comm'n*, 169 Ill. App. 3d 376, 523 N.E.2d 589 (1988)). Mental disability claims of school teachers who feared for their safety as well as teachers who actually were assaulted by students have also been denied. See *Board of Education v. Industrial Comm'n*, 182 Ill. App. 3d 983, 538 N.E.2d 830 (1989); *Chicago Board of Education v. Industrial Comm'n*, 169 Ill. App. 3d 459, 523 N.E.2d 912 (1988). In each instance, the court held that mental disorders such as anxiety, emotional stress or depression that develop over time in the normal course of the employment relationship do not constitute compensable injuries. In each instance the claimant was exposed to nothing more than the usual employment tensions.

■ Claimant traces his disability to the February 1991 altercation with Stone. One of his students became disruptive and claimant attempted to remedy the situation. Such problems were not unusual in working with behavioral disorder children. The problem led to a confrontation with one of the classroom team members, the class' social worker. Again, confrontations over how to handle problem situations were not unusual. This confrontation, however, led to physical contact on the part of claimant. Stone, as was his usual manner, was gesturing with his hands while talking to claimant. Even though claimant had worked with Stone some seven years and reported no history of any prior difficulties with him, claimant believed he was being attacked. From an objective standpoint, claimant's perception of being attacked was out of the ordinary. Even if we were to accept claimant's view of the incident, claimant also testified he was able to continue working the rest of the day. In fact, claimant was able to continue working for another year. During this time claimant also experienced many stressful events in his life including having to face disciplinary and criminal charges arising out of the February incident. Claimant did not seek psychiatric help, however, until he was suspended in March 1992 for another incident at school. It would appear that everything happening in claimant's life is what caused claimant's mental disability and that the February incident was not the major contributory cause of his condition. Dr. Halper's records place no significance on the actual contact in the development of claimant's condition but, rather, focus on claimant's perceived threat from Stone and

subsequent harassment by school authorities. Given our prior rulings and the circumstances as presented, clearly claimant cannot satisfy the mental-mental criteria to justify compensation in this instance.

Claimant points out that an employee can recover for psychological disability or injury even when any minor physical contact or injury occurs. *Chicago Park District v. Industrial Comm'n*, 263 Ill. App. 3d 835, 842, 635 N.E.2d 770, 776 (1994). Claimant therefore argues his confrontation with Stone falls under the physical-mental category. Claimant, however, was the one who inflicted the physical contact. Claimant was not slapped, poked or touched in any manner. While claimant may have perceived he was being attacked, in fact, no one ever made any physical contact with claimant. Claimant received no physical injury of any kind, however slight. Should we allow claimant to turn his overreaction of grabbing Stone's fingers or shoulders into a physical-mental disability claim? Surely this is not what was intended by the holding in *Chicago Park District*. Claimant was not hit or slapped by his supervisor or by any other employee. Claimant was the one who made physical contact, even if we view it as a self-defensive move. Claimant suffered no physical contact or injury of any kind, no matter how slight. If a teacher who is actually slapped by a student is not allowed to recover, how can we justify awarding compensation to a teacher who does the shoving or touching? See *Board of Education*, 182 Ill. App. 3d 983, 538 N.E.2d 830. As we recently stated in *Skidis v. Industrial Comm'n*, 309 Ill. App. 3d 720, 724 (1999): "The presence of a physical trauma, not an employee's subjective physical reaction to some nonphysical incident, determines whether a case qualifies as a 'physical-mental' case." No matter how persuasive claimant's argument may be, we must conclude both the arbitrator and Commission erred in awarding claimant compensation under these circumstances.

For the aforementioned reasons, we reverse the award of benefits.

Order reversed.

McCULLOUGH, P.J., and RAKOWSKI, COLWELL, and HOLD-RIDGE, JJ., concur.