# Illinois Official Reports

## Appellate Court

<div style="border:1px solid">

### *State v. Hitachi, Ltd.*, 2021 IL App (1st) 200176

</div>

| | |
|---|---|
| Appellate Court Caption | THE STATE OF ILLINOIS, by Its Attorney General, Kwame Raoul, Plaintiff-Appellee and Cross-Appellant, v. HITACHI, LTD.; HITACHI DISPLAYS, LTD.; HITACHI ELECTRONIC DEVICES (USA) INC.; LG ELECTRONICS, INC.; LG ELECTRONICS USA, INC.; LG ELECTRONICS TAIWAN TAIPEI COMPANY, LTD.; PANASONIC CORPORATION; MATSHUSITA ELECTRONIC INDUSTRIAL COMPANY, LTD.; PANASONIC CORPORATION OF NORTH AMERICA; MT PICTURE DISPLAY COMPANY, LTD.; KONINKLIJKE PHILIPS ELECTRONICS N.V.; PHILIPS ELECTRONICS NORTH AMERICAN CORPORATION; PHILIPS ELECTRONICS INDUSTRIES (TAIWAN), LTD.; SAMSUNG DISPLAY DEVICE COMPANY, LTD.; SAMSUNG SDI AMERICA, INC.; TOSHIBA CORPORATION; TOSHIBA AMERICA, INC.; TOSHIBA AMERICA INFORMATION SYSTEMS, INC.; TOSHIBA AMERICA ELECTRONIC COMPONENTS, INC., Defendants (STERICYCLE, INC., Intervenor-Appellant and Cross-Appellee). |
| District & No. | First District, Third Division<br>No. 1-20-0176 |
| Filed | September 8, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-CH-35266; the Hon. Sanjay T. Tailor, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed. |
| Counsel on Appeal | Ian H. Fisher, of Hahn Loeser & Parks LLP, of Chicago, for appellant. |
| | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Laura Wunder, Assistant Attorney General, of counsel), for appellee. |
| Panel | JUSTICE McBRIDE delivered the judgment of the court, with opinion.<br>Justices Ellis and Burke concurred in the judgment and opinion. |

## OPINION

¶ 1    This appeal arises from a *parens patriae* action brought by the State on behalf of Illinois indirect purchasers of products containing cathode ray tubes (CRTs), alleging violations of the Illinois Antitrust Act (Act). 740 ILCS 10/1 *et seq.* (West 2018). Following disputes with the claims administrator (administrator) as to its eligibility, the appellant, Stericycle, intervened in that action and filed a motion "for determination of valid clams," requesting that the court "return [its] claims *** to 'non-deficient' status *** and deem them valid." The State moved for summary judgment, in part based on evidence showing that Stericycle had grossly inflated the number of eligible products it purchased. Stericycle acknowledged that its claim was overstated and "needed to be adjusted," but requested that the court allow it to submit a revised claim. The court denied Stericycle's motion "for determination of valid clams" and granted the State's motion for summary judgment, concluding that there was no basis to validate Stericycle's admittedly inflated claim. The court also rejected Stericycle's argument that it should be given a chance to revise its claim, noting, in part, that Stericycle's original claim was "so untethered to reality" that it appeared to be "simply an attempt to defraud the State." Stericycle appeals the circuit court's order, contending that the court erred in granting summary judgment because it is entitled to compensation and because there was no legal basis to deny its claim.

¶ 2    Before other technologies largely replaced them, CRTs were used in TV and computer monitor displays. In 2012, under its *parens patriae* authority, the State filed an action in the circuit court, alleging that multiple defendants violated the Act by conspiring to fix, raise, maintain, or stabilize the prices of CRTs, causing consumer overcharges. Defendants fell into six groups related to Hitachi, Ltd. (Hitachi); LG Electronics, Inc. (LG); Koninklijke Philips Electronics N.V. (Philips); Samsung Display Device Company, Ltd. (Samsung); Panasonic Corporation (Panasonic); and Toshiba Corporation (Toshiba).

¶ 3    Throughout 2016 and 2017, the State and four groups of defendants—namely Hitachi, LG, Philips, and Samsung—settled the State's claims resulting in a fund of approximately $36 million for distribution to eligible Illinois consumers, who made eligible purchases between

March 1, 1995, and November 25, 2007 (conspiracy period). In November 2017, those parties filed a joint motion for approval of a notice plan, including notice by publication and proposed "short form" and "long form" notices to potentially eligible purchasers, which provided potentially affected individual and business purchasers with information about the litigation, settlements, and available courses of action.

¶ 4        Both the short form and long form notices advised Illinois consumers of the litigation and settlements, including information about participating or opting out. They advised that the maximum amount recoverable would be $20 per television and $60 per monitor and that no distribution would occur until after trial or settlement with the defendants who had not yet settled. Both notices also included a phone number and website for obtaining further information.

¶ 5        The notice further cautioned: "In order to be a valid claim, your claim form must be complete at the time of filing. You should not leave any part of the claim form blank or include inaccurate information that you intend to update later."

¶ 6        A final section required verification under penalty of perjury. By verifying on behalf of a business, a claimant confirmed the quantities purchased and that

> "(i) I am duly authorized by this business to make this verification; (ii) this business purchased its CRT products for its own use and not for resale, and, (iii) at the time of the purchase(s) of all CRT televisions and/or CRT monitors claimed in this form [either] its headquarters was located in Illinois [or] it was incorporated in Illinois."

¶ 7        On November 20, 2017, the circuit court entered an order approving the proposed notice plan and specifically approving the long and short forms of the settlement notice.

¶ 8        Stericycle, which is headquartered in Illinois, submitted a claim in July 2018, certifying that it had made eligible purchases of 77,139 CRT monitors during the conspiracy period. A Stericycle corporate officer, Vice-President and Assistant General Counsel Amanda Metz, verified the claimed quantity under penalty of perjury.

¶ 9        In filing its claim and subsequently, Stericycle frequently acted through a claims-filing agent, Class Action Capital (CAC). CAC's clients also included 26 other businesses that filed claims in this action, but who are not parties to this appeal.

¶ 10        Meanwhile, in early 2018, the State and remaining defendants, Toshiba and Panasonic, settled the State's claims, for a total of $11.2 million, increasing the settlement fund to approximately $47 million.

¶ 11        In late October and early November 2018, the administrator sent challenge and rejection letters. During that time, Stericycle received a challenge letter asking for additional documentation to support their claimed CRT purchases. The administrator's letter explained that examples of sufficient documentation included receipts, invoices, or an affidavit with a "detailed explanation" and "description of the specific products purchased and when and where they were purchased." The letters further specified that "[t]he documentation must also demonstrate that the claimed units were purchased for your own use in Illinois." To avoid rejection of the claim, the letters required this supporting documentation by November 16, 2018, which was later extended to December 3, 2018.

¶ 12        In November 2018, in response to the challenge letter, CAC submitted a claimant declaration. Stericycle's declaration was verified by Metz and dated July 10, 2018. The declaration related that Stericycle's corporate headquarters was in Illinois and that it currently

had "approximately 25,700 employees." It represented that: "Due to many mergers and acquisitions, the total employee count over the class period is not available. Therefore, all formulas and estimations are derived from the current employee count." Metz represented that Stericycle no longer had any "actual business records or other product purchase record documentation" from the conspiracy period. Instead, Stericycle represented that it "worked with [CAC] to accurately estimate proper purchase amounts." Using data from an "Environmental Protection Agency report," Stericycle estimated that between 62.76% and 86.32% of its employees used computers during the conspiracy period. Stericycle also estimated, using "[CAC]'s research" on electronic recycling, that those computers would have been replaced three times in addition to their original purchase during the same period. Extrapolating with the current employee count, Stericycle posited that it purchased 77,139 monitors between 1995 and 2007.

¶ 13    On January 2, 2019, CAC requested a status update on its clients' claims, including those of Stericycle. On January 4, 2019, the Administrator initially responded erroneously that "[all of] your claims are no longer deficient. We are still processing deficiencies and plan to distribute in the next few months." CAC responded, requesting a "report of the accepted products amounts." In the course of preparing that report, the Administrator determined that certain claims needed further audit. Therefore, later that same day, January 4, 2019, the Administrator e-mailed CAC for confirmation that Stericycle "purchased and used the CRT monitors in Illinois."

¶ 14    In subsequent correspondence, CAC questioned or disputed that the notice required that the CRT products be purchased and used in Illinois. The Administrator, however, maintained that purchase and use in Illinois was required and continued to seek confirmation from CAC that the claimed purchases met those requirements

¶ 15    In one e-mail, on January 29, 2019, the Administrator informed CAC that the "documentation you have provided does not establish that your clients made the claimed purchases in Illinois. In addition, it does not establish that the claimed purchases were made for the client's own use in Illinois." The Administrator requested client-verified information "that supports these two requirements" within 14 days. CAC requested an extension until March 1, 2019, to which the Administrator agreed.

¶ 16    On March 1, 2019, CAC responded to the Administrator's January 29, 2019, e-mail. Regarding "use in Illinois," CAC's response provided an "Excel report" and listed the quantity maintained to be for "end use in" Illinois. As for "purchase in Illinois," CAC responded that its clients had supplied verified claim forms and that it wanted a "written explanation" as to why anything beyond the claim form should be required.

¶ 17    On April 5, 2019, CAC sent additional documentation for five claimants' claims, including Stericycle's, asserting that they were a "sample subset of our clients to help give the Administrator comfort and confidence that the claimed CRTs for all of our IL headquartered clients were purchased in Illinois."

¶ 18    On April 15, 2019, the Administrator responded. Regarding Stericycle's claim, the Administrator "determined that the documentation provided *** was insufficient to show either purchases in Illinois or use in Illinois for the claimed CRT products." The Administrator noted that "the data only show[ed] the purchase information for monitors from 2013 through 2019 which is after the [conspiracy period]." Moreover, although Stericycle claimed eligible purchases of 77,139 during the approximately 12-year conspiracy period, the Administrator

- 4 -

further observed that the documentation showed that Stericycle had purchased only 2584 monitors that were shipped to Illinois during the 6-year period for which it provided data. The Administrator requested additional documentation by April 29, 2019.

¶ 19 While the above communications between CAC and the Administrator were ongoing, Stericycle and CAC filed a petition for leave to intervene in this action in the circuit court in late February 2019. The petition sought leave to file an attached "Motion for Determination of Valid Claims and Order Temporarily Barring Distribution" and accompanying memorandum. In part, Stericycle and CAC contended that they should not have to prove that their claimed CRT products were used in Illinois. On April 23, 2019, the State filed its opposition to Stericycle and CAC's petition to intervene. The State argued that Stericycle and CAC should not be allowed to intervene, because they "had not complied with the requirements of the Notice and audit process."

¶ 20 Thereafter, on April 24, 2019, CAC sent an additional e-mail to the Administrator regarding Stericycle. That e-mail purported to explain the data and Stericycle's claim of 77,139 monitors, breaking the data down into where the monitors were used. Regarding purchases made for its "global employees," CAC stated that the number of CRT monitors purchased was 77,139, the amount previously claimed. Regarding purchases made for all United States-based employees, CAC specified that it was using an "updated data set" showing that "from 2013 through 2019," Stericycle purchased 3238 monitors that were delivered to the United States. CAC then extrapolated that it would have purchased 43.17 monitors per month for all United States employees during the conspiracy period, for a total of 6605 monitors. Regarding purchases made for end-use in Illinois, CAC used the same "updated data set," showing 2584 monitors purchased from 2013 through 2019. CAC extrapolated that it would have purchased 34.45 monitors per month for its Illinois employees during the conspiracy period, for a total of 5271 monitors.

¶ 21 The e-mail further indicated that, although Stericycle was providing this information in response to the administrator's request, it "continued to maintain [that] all 77,139 claimed purchases *** were eligible" and it was "continuing [its] efforts to obtain relief from the court." Stericycle corporate officer Metz replied to the e-mail the same day, "confirm[ing]" that the information was the "best approximation" of Stericycle's CRT purchases during the conspiracy period "to the best of [her] knowledge and belief."

¶ 22 Although Metz confirmed that information, about three weeks earlier, on April 4, 2019, Metz consulted with another Stericycle employee about the company's claim, asking in an e-mail whether the company's current practices of purchasing monitors through the vendor it currently used would have been "approximately the same" during the conspiracy period. That employee responded, "Yes they were however, if you are going to use device counts as a trend, you will likely need to adjust based on Stericycle being a smaller company back then."

¶ 23 In May 2019, the circuit court entered an order allowing Stericycle to intervene but denying intervention to CAC. The court determined that CAC—which was not itself a claimant— lacked standing to intervene to represent its clients' interests and had no basis for intervening in its own right. The court noted, however, that it was not determining the merits of whether Stericycle was "entitled to participate in the settlement proceeds."

¶ 24 Having been allowed to intervene, Stericycle filed its "Motion for Determination of Valid Claims and Order Temporarily Barring Distribution" and accompanying memorandum on May 15, 2019. Stericycle asked the circuit court to "return [its] claims *** to 'non-deficient' status

*** and deem them valid." Stericycle argued that "use in Illinois" was a "new" eligibility requirement that it should not be required to establish. As for "purchase in Illinois," Stericycle contended that, to the extent that it was required, Stericycle had provided satisfactory support for its claim. Further, Stericycle contended, if it the court rejected the above arguments, then Stericycle "should not be bound by the releases in the [settlements]."

¶ 25    On June 19, 2019, the State filed its opposition to Stericycle's motion, and subsequently, a corrected opposition on July 1, 2019. Initially, the State disputed that "use in Illinois" was a "new" requirement or that Stericycle should be allowed to disregard it. As for "purchase in Illinois," the State asserted that Stericycle had provided no information that the items had been purchased in Illinois, other than identifying an Illinois address as its headquarters.

¶ 26    The State also observed that Stericycle had filed a "grossly inflated and implausible" claim to be reimbursed from the settlement proceeds for 77,139 monitors during the conspiracy period. The State noted that Stericycle's claim was "derive[d] *** by using third-party estimates of computer usage rates for 1993 and 2001 to estimate its computer usage rates during the 1995-2007 Claims Period and then multiplying those estimates by Stericycle's *current, worldwide* employee count." (Emphasis in original.) This figure was clearly inaccurate, however, as Stericycle had acknowledged that it had acquired numerous companies during and after the conspiracy period. As an example, the State observed that "roughly 20%" of Stericycle's then-current employee count included employees of a Canadian company, Shred-It, that had no connection to Illinois during the conspiracy period. In light of the above, the State argued that Stericycle did not establish that it had either purchased the 77,139 claimed monitors in Illinois or used them in Illinois. Accordingly, the State argued that Stericycle's motion for a determination of validity of those claims should be denied.

¶ 27    On July 3, 2019, Stericycle replied in support of its motion. Stericycle asked the court to determine only "the legal requirements to receive settlement funds," but "not make factual findings concerning Stericycle's claim." Stericycle also argued that all of its claimed purchases were made in Illinois because its headquarters was located in Illinois, maintaining that "a business's purchases are made in the state where it is headquartered."

¶ 28    In August 2019, the State filed a motion for summary judgment, with accompanying memorandum. The State argued that because Stericycle's claim was invalid under any standard, the court must deny its motion to have its claim declared "valid." The State observed that the information submitted by Stericycle in support of its claimed 77,139 monitors failed to show either "use in Illinois" or "purchase in Illinois." The State additionally argued that, even under Stericycle's "flawed view of the Notice requirements," the claim was still invalid. By using Stericycle's 2018 worldwide employee count, Stericycle failed to account for "the company's substantial growth since 1995—including the acquisition of companies that were not headquartered in Illinois, whose purchases would not be eligible for recovery." Attaching the e-mail in which Metz was informed that she would "likely need to adjust based on Stericycle being a smaller company" during the conspiracy period, the State argued that Stericycle submitted and attempted to support its grossly inflated claim, while knowing it had not made the appropriate adjustments. The State noted that Stericycle had submitted no information to the Administrator or court regarding how many of the current employees were employed by companies headquartered in Illinois during the conspiracy period. The State attached information in particular about Stericycle's 2015 acquisition of "Shred-It," an Ontario-based company with 5400 employees, whose work force was included in the numbers

used to calculate and substantiate Stericycle's claim, despite it not being an Illinois-headquartered company during the conspiracy period.

¶ 29     On October 28, 2019, Stericycle responded to the State's motion for summary judgment. Stericycle continued to maintain that "use in Illinois," was not required, and that it met the "purchased in Illinois" requirement because "businesses were entitled to recover for purchases made while headquartered in Illinois." Stericycle also contended that the Administrator had not "raised any questions concerning the use of a current, worldwide employee count to calculate Stericycle's claim."

¶ 30     In November 2019, the State replied in support of its summary judgment motion, arguing that Stericycle could not show that its claim for 77,139 monitors was valid, even under the criteria that it urged the court to apply.

¶ 31     Meanwhile, on September 4, 2019, the circuit court heard oral argument on Stericycle's motion for determination of valid claims. After argument, the court found that there was a conflict between the claim form notice, which included a "use in Illinois" requirement, and the "settlement agreement and the release," which did not. The court found the latter to be controlling and, accordingly, determined that, to be eligible to participate in the settlement, Stericycle did not need to show "use in Illinois" for its CRT purchases.

¶ 32     The court also heard argument from the parties concerning "purchase in Illinois" and the State's position that Stericycle submitted an invalid claim in any event. In concluding the hearing, the court remarked that it was going to give only a "partial ruling," as it was "not prepared to rule on this question of purchase in Illinois." The court stated that it would further consider that issue in connection with the State's pending summary judgment motion. The court entered a written order granting Stericycle's Amended Motion for Determination of Valid Claims "in part," and rejecting "[t]he State's position that 'use in Illinois' is required." The court "reserve[d] ruling on the remainder."

¶ 33     On October 2, 2019, the State filed a Motion for Reconsideration of the September 4, 2019, partial ruling.

¶ 34     At the December 30, 2019, hearing on the State's summary judgment motion, the circuit court first considered whether Stericycle's claim for 77,139 monitors was invalid regardless of its assertions about "purchase" and "use." The State argued that "[t]he fact that they themselves admit they have an overstated claim certainly makes it rational for our office to have denied that claim; and on that basis alone, we're entitled to summary judgment." Stericycle argued that "no issue was ever raised by the administrator as to the methodology and how it had been calculated." The court questioned Stericycle,

> "Why is it the claims administrator's burden or the State's burden to tell the claimant, Stericycle, that its claim is inherently and patently inaccurate? *** Isn't it Stericycle's burden in the first instance to make a claim that's accurate? *** Why is it their burden to point out to [Stericycle] that your claim is simply false?"

Stericycle acknowledged that its claim was "overstated," and needed to be "adjusted," but argued that it was "always going to be an estimate," and "they did the best they could." The court found "no evidence of that," observing that the record showed that "nobody really cared to do an investigation." The court noted that Stericycle's claim, which was verified under oath, was "false" and asked why it should not be considered a "two-bit attempt at fraud." The court elaborated: "Let me be absolutely clear here. I find this submission to be so sloppy, so

untethered to reality, as to give rise to—on its face, it appears to be simply an attempt to defraud the State."

¶ 35    The court further observed that Stericycle had "filed a motion to process claims under correct criteria, which is" "asking the Court to have a second crack at it, to come up with a number. Is that right?" Stericycle responded that it was asking the court to "resolve the legal issues" first, and then they "will address these issues [regarding the quantity of Stericycle's claims]." The court remarked, however, that, "Even if those issues are *** resolved in your favor, you're stuck on this problem about your claim."

¶ 36    The court characterized Stericycle's request as "an extension of time to get your act together," further observing that "nothing precluded Stericycle from putting forward an accurate claim, doing the work that's necessary, applying the most basic level of rigor that might be expected in this type of analysis, and giving the State a claim that has some basis in reality, not some pie-in-the-sky number." The court questioned why Stericycle should be allowed an additional opportunity to submit a supportable claim, asking "Why should the Court give you a second chance at this? You had an opportunity to submit an accurate claim. There's a claims deadline. Other folks have submitted their claims. And now you're essentially asking the Court to *** 'Let us get another crack at this.' " The court further opined that it "d[id]n't know why the Court should give Stericycle any relief."

¶ 37    Ultimately, the court granted the State's summary judgment motion, stating:

"The Court will grant the State's Motion for Summary Judgment on the basis that Stericycle's claim of 77,139 CRT products is inaccurate. And that's understating it.

It's clear, based on this record that *** [t]he claimed amount is entirely untethered to reality. I think anybody exercising the slightest bit of diligence would have known that. And, in fact, the record evidence shows that Stericycle knew that its claim was inaccurate, and yet it proceeded on it. It's not the State's burden nor the claims administrator's burden to police claimants who are peddling inaccurate claims.

***

Every iteration of Stericycle's claims for the purchase of CRT monitors during the 1995 to 2007 claim period is based on an extrapolation of the head count from *** 2018, which is a time period when it was a much larger company than it was during the claim period. In addition, that head count also includes employees of related or subsidiary companies, some of which were not headquartered in Illinois, but rather outside of Illinois and, therefore, even under Stericycle's theory, would not be entitled to make a claim.

There was no rigor employed in coming up with this claim. So to the extent that the intervenor, Stericycle, seeks a determination on the validity of its claim, the Court finds that it's not valid on the basis that *** there is no basis in fact for the amount of the claim; that is, the 77,139 monitors. Moreover, Stericycle even today has not put forward any evidence to show what its actual claim is.

On that basis, the Court is going to grant the Motion for Summary Judgment."

¶ 38    The court went on to rule that "[a]ll other motions," were "denied as moot."

¶ 39    That same day, the court entered a written order, granting the State's motion for summary judgment "on the basis that Stericycle's claim for 77,139 CRT products is inaccurate, as stated in open court." The court also denied Stericycle's motion for determination of valid claims,

and denied "as moot" the remaining motions, in particular, the State's motion for reconsideration of the September 4, 2019, order, and Stericycle's motion to process claims under correct criteria. The court further found, under Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016), that there was "no just reason for delaying either enforcement or appeal or both of this order."

¶ 40 Stericycle appealed that order, and the State cross-appealed the denial of its motion to reconsider the circuit court's partial ruling of September 4, 2019.

¶ 41 In this court, Stericycle argues that the circuit court erred in granting summary judgment for the State. Stericycle contends that the there was a genuine issue of material fact that precluded summary judgment, "namely, the parties' dispute over the estimated number of CRT products that Stericycle purchased during the Conspiracy Period." It contends that the "circuit court improperly resolved" this disputed issue "in favor of the State, not against it."

¶ 42 The State responds that summary judgment was proper because there was no basis on which Stericycle's admittedly defective claim could be deemed valid. As to its cross-appeal, the State asserts that, "upon further opportunity for review," the cross-appeal was unnecessary because no part of the circuit court's judgment was adverse to the State. Instead, the State asks this court to consider its argument that the court erred in determining that "use in Illinois" was not required and that Stericycle failed to show that requirement, as an alternative basis to affirm summary judgment.

¶ 43 This court's review of the grant of summary judgment is *de novo*. *Dynak v. Board of Education of Wood Dale School District 7*, 2020 IL 125062, ¶ 15. Summary judgment may be granted if "there is no genuine issue as to any material fact and *** the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2018). "If the plaintiff fails to establish any element of his claim, summary judgment is appropriate." *Dardeen v. Kuehling*, 213 Ill. 2d 329, 335 (2004).

¶ 44 After being allowed to intervene in this action in the circuit court, Stericycle proceeded on its motion for determination of valid claims, asking that the court "deem [its claims] valid." The State sought summary judgment, arguing that, even under Stericycle's proposed interpretations of the notice requirements, there was no basis to validate its admittedly inflated claims.

¶ 45 The trial court agreed with the State. Even accepting Stericycle's proffered interpretation of the "purchase in Illinois" requirement, the circuit court noted that undisputed evidence showed that Stericycle did not purchase the claimed 77,139 monitors during the conspiracy period.

¶ 46 Given the undisputed evidence, Stericycle failed to show that its claim should be validated, even if the issues that it wanted the circuit court to reach were resolved in its favor. Consequently, there was no basis upon which Stericycle's admittedly defective claim could be deemed valid. In these circumstances, "there [wa]s no genuine issue as to any material fact" that would allow Stericycle's claim to be validated. 735 ILCS 5/2-1005(c) (West 2018). The circuit court, therefore, properly entered summary judgment against Stericycle on that basis.

¶ 47 Stericycle, however, submits that it merely wanted the circuit court to rule on certain legal questions about how its claim should be assessed. Stericycle cites no authority that would allow, much less require, the circuit court to address only its preferred issues. Stericycle brought the question of the validity of its claim before the circuit court, and the court decided

that question, albeit on a ground that Stericycle wishes that the court did not reach. The circuit court was not obligated to ignore a basic defect in Stericycle's claim to reach the questions Stericycle wanted it to consider.

¶ 48 Stericycle also complains that it was not afforded the opportunity to revise its claim. However, it provided no authority in either the circuit court or this court that would allow it to amend its claim after the claims deadline and after the extended deadline for substantiating those claims. To the contrary, the notice informed Stericycle that, in order to have a valid claim, it should not "include inaccurate information that you intend to update later."

¶ 49 Finally, Stericycle briefly contends that any decision upholding the denial of its claims "would amount to a deprivation of Stericycle's rights to due process and equal protection," but it cites no legal authority for that argument. Illinois Supreme Court Rule 341(h)(7) (eff. May 25, 2018) requires an appellant's brief to contain argument supported by citations to relevant authorities. "A failure to cite relevant authority violates Rule 341 and can cause a party to forfeit consideration of the issue." *Kic v. Bianucci*, 2011 IL App (1st) 100622, ¶ 23. Where an appellant has failed to support his or her arguments with citations to authority, this court will not research the issues on the appellant's behalf. See *id.* (noting that this court "is not a depository in which the appellant may dump the burden of argument and research" (internal quotation marks omitted)); *Skidis v. Industrial Comm'n*, 309 Ill. App. 3d 720, 724 (1999) ("[T]his court will not become the advocate for, as well as the judge of, points an appellant seeks to raise."). Accordingly, we find that Stericycle has forfeited review of any due process or equal protection claim. See *Atlas v. Mayer Hoffman McCann, P.C.*, 2019 IL App (1st) 180939, ¶ 33 (finding that an issue had been forfeited where appellant did not provide cohesive argument and pertinent authority).

¶ 50 Having found that summary judgment was properly granted where Stericycle's admittedly defective claim could be deemed valid, we agree with the State that we need not consider its alternative basis for affirming that Stericycle was required to show "use in Illinois" for its claimed CRT purchases and that it failed to do so.

¶ 51 Stericycle, however, contends that this court must still determine whether "use in Illinois" is required because the trial court's decision regarding that requirement was "not limited to Stericycle" and the State cannot "deprive" other claimants of "the right to a review under the correct criteria because a different claimant overstated its quantity of purchases." Stericycle, however, has provided no argument or authority indicating that it has standing to raise issues on behalf of other claimants. *Bank of America National Ass'n v. Bassman FBT, L.L.C.*, 2012 IL App (2d) 110729, ¶ 13 ("A litigant must assert his or her own legal rights rather than the rights of a third party."). Because we have determined that the trial court properly granted summary judgment in this case, we will not go on to provide an advisory opinion or consider abstract questions as to the notice requirements that are not necessary to our resolution of this appeal. *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 2016 IL 118129, ¶ 10 ("As a general rule, courts of review in Illinois do not decide moot questions, render advisory opinions, or consider issues where the result will not be affected regardless of how those issues are decided. [Citation.] This court will not review cases merely to establish a precedent or guide future litigation." (Internal quotation marks omitted.)).

¶ 52 For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 53 Affirmed.